# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGET BITTMAN, | ) | |
| | ) | COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No.: 1:14-cv-8191 |
| MEGAN FOX, an individual; KEVIN DUJAN, | ) | |
| an individual; DAN KLEINMAN, | ) | |
| an individual; ADAM ANDRZEJEWSKI, an | ) | |
| individual; and, FOR THE GOOD OF | ) | |
| ILLINOIS, an Illinois Not for Profit | ) | |
| Organization, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMAND |

## COMPLAINT

NOW COMES the Plaintiff BRIDGET BITTMAN ("Ms. Bittman" or "Plaintiff"), by and through her attorneys, Mudd Law Offices, and complains of the Defendants MEGAN FOX, KEVIN DUJAN, DAN KLEINMAN, ADAM ANDRZEJEWSKI, and FOR THE GOOD OF ILLINOIS, an Illinois Not for Profit Organization (collectively, "Defendants"), upon personal information as to her own activities, and upon information and belief as to the activities of others and all other matters, stating as follows:

### NATURE OF ACTION

1.      This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"), Stored Communications Act, 18 U.S.C. §§ 2701, et seq. ("SCA"), and the Electronic Communications Privacy Act, 18 U.S.C. §§ 2510 ("ECPA"); defamation *per se*; false light; intentional infliction of emotional distress; and assault, all arising from conduct engaged in by the Defendants to harm Ms. Bittman.

2.      By this action, Ms. Bittman seeks statutory damages, compensatory damages,

punitive damages, attorney's fees and costs, injunctive relief, and all other relief to which the she may be entitled and as deemed appropriate by this Court.

## PARTIES

3.      BRIDGET BITTMAN is a citizen of the State of Illinois and a resident of Cook County, Illinois.

4.      MEGAN FOX is a citizen of the State of Illinois and a resident of Will County, Illinois.

5.      KEVIN DUJAN is a citizen of the State of Illinois and a resident of Cook County, Illinois.

6.      DAN KLEINMAN is, upon information and belief, a citizen of the State of New Jersey.

7.      ADAM ANDRZEJEWSKI is a citizen of the State of Illinois and a resident of Du Page County, Illinois.

8.      FOR THE GOOD OF ILLINOIS is an Illinois Not for Profit Organization.

## JURISDICTION AND VENUE

9.      This Court has jurisdiction over the subject matter of the Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the subject matter of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.      This Court may exercise personal jurisdiction over Defendants Megan Fox ("Fox"), DuJan ("DuJan"), and Andrzejewski ("Andrzejewski") because they are citizens and residents of Illinois.

11.      This Court may exercise personal jurisdiction over Defendant For The Good of Illinois because it is a business incorporated in Illinois.

12.      This Court may exercise personal jurisdiction over Defendant Dan Kleinman

2

("Kleinman") because he has sufficient contacts with Illinois for this Court to exercise general personal jurisdiction over him and/or has directed conduct toward Ms. Bittman in this jurisdiction sufficient for this Court to exercise specific personal jurisdiction over him.

13.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.  Further, the Defendants directed their conduct toward the Plaintiff in this district.

14.     The Defendants have engaged in intentional conduct with actual malice that has harmed Ms. Bittman.

15.     Ms. Bittman has been injured by the Defendants' conduct and has suffered damages resulting therefrom.

## FACTUAL BACKGROUND

16.     This action involves the Defendants' efforts to defame, discredit, disparage and damage Ms. Bittman's reputation and thereby cause her to suffer harm.

### Background on Parties

17.     Ms. Bittman is an employee of the Orland Park Public Library.

18.     For seven years, Ms. Bittman has worked full-time providing marketing and public relations for libraries.

19.     She has served on various committees for the "Big Read" program while working for her local library.

20.     She has spoken on library marketing best practices on several occasions.

21.     The Plaintiff is a well-respected member of the community.

22.     She has volunteered with local community theater, her church, and other organizations.

23.     Ms. Bittman has also operated a small, part-time business to supplement her income and pursue interests in floral design.

24.     The Defendants are community activists who oppose unfiltered access to the Internet at public libraries.

25.     Upon information and belief, none of the Defendants reside in Orland Park.

**Controversy Begins**

26.     In the Fall of 2013, Megan Fox ("Fox") and Kevin DuJan ("DuJan") complained that the Orland Park Public Library provided unfiltered access to the Internet.

27.     In her position with the Orland Park Public Library, Ms. Bittman publicly responded to the complaints.

28.     Since the Fall of 2013, Defendants Fox and DuJan have engaged in a campaign to change library policy at the Orland Park Public Library.

29.     This litigation is not about the efforts of Defendants Fox and DuJan to change policy at the Orland Park Public Library.

30.     This litigation is not about the efforts of Defendants Fox and DuJan to criticize Ms. Bittman in her position with the library.

31.     Rather, this litigation addresses the Defendants' efforts to personally attack and harm Ms. Bittman, to damage her reputation, and to harass and threaten her.

**Defendants' Wrongful Conduct**

32.     Over the last several months, the Defendants have engaged in repeated, relentless efforts to harm Ms. Bittman.

33.     The Defendants have engaged in a concerted campaign to destroy Ms. Bittman's reputation and career by posting numerous defamatory statements against her.

4

34.     The defamatory statements and efforts by which the Defendants engaged have harmed Ms. Bittman.

*Early Statements*

35.     As early as November 4, 2013, the Defendants began making and causing to be made numerous false and defamatory statements about the Plaintiff on various social media websites, including the Facebook Page "Fans of Megan Fox" ("Fox Facebook Page").

36.     On May 18, 2014, Defendant Fox posted a status on the Fox Facebook Page that accused the Plaintiff of filing false police reports ("Police Report Statement").

37.     Specifically, Defendant Fox stated:

> I wonder at what point in their presentation at the Hatefest that Mary Weimar and Bridget Bittman taught the other public employees in attendance about using the police as a weapon against their perceived enemies in the "opposition."  Do you know that the Orland Park Public Library Board contacted the police SIX TIMES in total to make false police complaints against me (and a few times against Kevin too) . . .
>
> The Police laughed at all of these people, but sadly the police never charged any of them with disorderly conduct for making false police reports.  They should have been charged.

38.     The Plaintiff does not file false police reports.

*Google Photo Statement*

39.     On June 12, 2014, Defendant Fox posted a photograph of the Plaintiff holding a champagne bottle on the Fox Facebook Page she apparently obtained through Google searches ("Google Photo").

40.     In a comment to the post with Google Photo, Defendant Fox stated:

> [Bridget Bittman] would have to be drunk to claim the ridiculous things she does about the library in the media
>
> "Sober up Bridget [t]he truth will set you free!"

5

("Google Photo Statement")

41.     Defendant Fox sought to portray Ms. Bittman as drinking alcohol while working for the Orland Park Public Library.

42.     Ms. Bittman does not drink alcohol while working for the Orland Park Public Library.

*Harassment Through Home Photos*

43.     Apparently, the Defendants were not satisfied with merely making false statements about Ms. Bittman's work performance.

44.     On June 18, 2014, Defendant Fox posted photographs of Ms. Bittman's home on the Internet.

45.     Upon information and belief, Defendants Fox and DuJan found Ms. Bittman's home.

46.     Upon information and belief, Defendants Fox and DuJan traveled to Ms. Bittman's home.

47.     Upon information and belief, Defendants Fox and DuJan photographed Ms. Bittman's home.

48.     Defendants Fox and DuJan knew Ms. Bittman would see their photographs of Ms. Bittman's home.

49.     Defendants Fox and DuJan knew Ms. Bittman would recognize her home in their photographs of her home.

50.     Defendants Fox and DuJan published photographs of Ms. Bittman's home in an effort to harass her.

51.     Defendants Fox and DuJan published photographs of Ms. Bittman's home in an

6

effort to intimidate her.

52.     Defendants Fox and DuJan published photographs of Ms. Bittman's home in an effort to cause her harm.

*July 8 Video*

53.     On July 8, 2014, Fox published a video on YouTube accessible on the webpage at the uniform resource locator ("url") https://www.youtube.com/watch?v=idu0lur4OCc ("July 8 Video").

54.     In posting the July 8 Video, Fox published a title for the video that reads "Bridget Bittman commits Disorderly Conduct/Breach of Peace on 7/8/14 according to Officer Schmidt."

55.     The July 8 Video contains no comments from anyone named Officer Schmidt.

56.     The July 8 Video contains a caption that reads "Outside the Orland Park Civic Center 7/8/14 at 1:15pm Bridget Bittman commits disorderly conduct/breach of peace 8 6 1 1."

57.     The Defendants included this caption in the July 8 Video.

58.     In the July 8 Video, Ms. Bittman does not commit disorderly conduct.

59.     In the July 8 Video, Ms. Bittman does not commit breach of peace.

60.     The title to the video and the caption state that Ms. Bittman engaged in criminal conduct.

61.     Ms. Bittman did not engage in any criminal conduct.

62.     Although Defendant DuJan filed a complaint against Ms. Bittman, the Orland Park Police Department concluded the complaint to be groundless.

63.     Officer Jody J. Schmidt of the Orland Park Police Department never cited Ms. Bittman for any criminal conduct or any conduct at all.

64.     Ms. Bittman was not cited with any crime for any conduct contained in the July 8

7

Video.

65.     The title and caption stating that Ms. Bittman committed disorderly conduct and breach of peace are false.

66.     The July 8 Video contains a caption that reads "Bittman makes a beeline for us clenching something…mace? Pepper spray? Stink bomb?"

67.     The July 8 Video suggests Ms. Bittman carried a weapon.

68.     Ms. Bittman did not carry a weapon.

69.     The July 8 Video contains a caption that reads "Look at him, this fruit is blocking me."

70.     The Defendants infer that Ms. Bittman used an anti-gay hateful term.

71.     Ms. Bittman did not use an anti-gay hateful term.

72.     Ms. Bittman did not call anyone a "fruit."

73.     On the webpage containing the July 8 Video, Fox originally published a caption that read:

> BREAKING! Video of Bridget Bittman committing Disorderly Conduct/Breach of Peace on 7/8/14.  The police have issued her a citation under Ordinance 2989 8-6-1-1. Remember that Bridget Bittman is not only the spokesman for the Orland Park Public Library (which makes her a public employee) . . . And this is how she behaves herself in public.  Trying to start a fight, brandishing some kind of weapon in her hand (mace? pepper spray?), using anti-gay slurs . . . Should a public employee like Bridget Bittman be allowed to keep her $100,000/year job after behaving this way in public and committing disorderly conduct?

("Original July 8 Caption").

74.     Later, Fox amended her post to read:

> Bridget Bittman (a public employee of the Orland Park Library) committed Disorderly Conduct/Breach of Peace on 7/8/14 outside the Orland Civic Center according to Officer Schmidt. This is shameful behavior from a public employee. It was highly unprofessional. Watch the video: Bittman attempts to start a fight, has something in her hands as she's walking purposefully towards us, uses an anti-

8

gay hateful term, and is then followed in this disgusting behavior by Diane
Jennings (who rants and raves and shouts expletives at the camera). These are
representatives of the Orland Park Public Library behaving this way. With one of
them (Bittman) earning over $100,000/year and behaving this way in public. On
7/8/14 Bittman was cited for Disorderly Conduct/Breach of Peace by the Orland
Park Police under Ordinance 2989 8-6-1-1 after Officer Schmidt viewed this
footage.

("July 8 Caption").

75. The Original July 8 Caption and the July 8 Caption again state that Ms. Bittman

"committed Disorderly Conduct/Breach of Peace."

76. Ms. Bittman did not commit Disorderly Conduct/Breach of Peace.

77. The July 8 Caption states Ms. Bittman engaged in "shameful behavior" and "was

highly unprofessional."

78. Ms. Bittman did not engage in shameful or highly unprofessional behavior.

79. Ms. Bittman was not unprofessional.

80. The Original July 8 Caption and the July 8 Caption state Ms. Bittman attempts to

start a fight.

81. Ms. Bittman did not attempt to start a fight.

82. In fact, the Orland Park Police Department concluded DuJan blocked Ms.

Bittman's path on the sidewalk.

83. The Original July 8 Caption and the July 8 Caption state that Ms. Bittman used an

"anti-gay" term.

84. Ms. Bittman did not use an anti-gay hateful term.

85. The July 8 Caption states "Bittman was cited for Disorderly Conduct/Breach of

Peace by Orland Park Police under Ordinance 2989 8-6-1-1 after Officer Schmidt viewed this

footage."

9

86.    Ms. Bittman again was not cited for Disorderly Conduct/Breach of Peace.

87.    Neither Officer Schmidt nor anyone at the Orland Park Police Department cited Ms. Bittman for anything in the July 8 Video.

88.    The foregoing false statements contained in the July 8 Video are defamatory.

89.    Since its publication, more than 1400 individuals have viewed the July 8 Video.

*Republication of July 8 Video*

90.    Since Fox posted the July 8 Video, Defendants Fox and DuJan informed Adam Andrzejewski of For the Good of Illinois about the July 8 Video.

91.    Since then, Defendant Andrzejewski sent an electronic statement to 60,000 of his followers that mentioned Ms. Bittman and included a link to the July 8 Video.

92.    Since Defendant Andrzejewski sent his electronic statement, the Illinois Family Institute posted a link to the July 8 Video on its website at the url http://illinoisfamily.org/pornography/is-your-library-xxx-like-orland-park/.

93.    Defendant Kleinman republished the July 8 Video on his Safe Libraries blog at the url http://safelibraries.blogspot.com/search?updated-max=2014-08-06T06:14:00-04:00&max-results=1.

94.    On his Safe Libraries blog, Defendant Kleinman states that Ms. Bittman attacked a "gay man" ("Republication Statement").

95.    Ms. Bittman did not attack a gay man.

96.    Despite knowing the false nature of the statements in the July 8 Video and its webpage on YouTube, Defendant Fox has not removed the statements.

97.    The Defendants have intentionally republished the July 8 Video and the defamatory statements contained therein and on YouTube.

*Unauthorized Facebook Page*

98.     Again, rather than limit their attacks to her employment with the Orland Park Public Library, the Defendants continued their attacks on her personal life.

99.     On or about July 10, 2014, Defendants Fox and DuJan created a webpage on the website owned by Facebook, Inc. ("Facebook") at the url

http://www.facebook.com/sassyplantsillinois ("Facebook Page").

100.    In creating the Facebook Page, Defendants Fox and DuJan used Ms. Bittman's personal information.

101.    In creating the Facebook Page, Defendants Fox and DuJan used a photograph of Ms. Bittman.

102.    Ms. Bittman operates a floral design business.

103.    In creating the Facebook Page, Defendants Fox and DuJan made it appear that Ms. Bittman created, maintained, and operated the Facebook Page.

104.    In creating the Facebook Page, Defendants Fox and DuJan made it appear that Ms. Bittman created the Facebook Page for her floral design business.

105.    In creating the Facebook Page, Defendants Fox and DuJan impersonated Ms. Bittman.

106.    In creating the Facebook Page, Defendants Fox and DuJan impersonated Ms. Bittman and floral design business.

107.    To create the Facebook Page, Defendants Fox and DuJan created an account with Facebook ("Facebook Account").

108.    Defendants Fox and DuJan will receive any communications intended for Ms. Bittman sent to the Facebook Page and/or Facebook Account.

11

109.    Upon information and belief, third parties sent communications intended for Ms. Bittman to the Facebook Page and/or Facebook Account.

110.    Defendants Fox and DuJan have received communications intended for Ms. Bittman sent to the Facebook Page and/or Facebook Account.

111.    The statements and posts on the Facebook Page falsely make Ms. Bittman and her floral business to appear prejudiced against gay individuals.

112.    The statements and posts on the Facebook Page make Ms. Bittman and her floral design business appear unprofessional.

113.    The statements and posts on the Facebook Page prejudice Ms. Bittman and her floral design business.

*Statements on Sexual Orientation*

114.    Since the July 8 Video, the Defendants have made efforts to characterize Ms. Bittman as a "gay hater."

115.    On August 21, 2014, Defendant Kleinman expressly characterized Ms. Bittman as a "gay hater" ("Gay Hater Statement").

116.    Defendant Kleinman has characterized Ms. Bittman as a "homophobe."

117.    Ms. Bittman is not a "gay hater" or "homophobe."

**Concerted Conduct**

118.    The foregoing statements made by the Defendants shall hereinafter be referred to collectively as the "False and Defamatory Statements."

119.    Where any one Defendant did not actually post one or more of the statements or photos about the Plaintiff, such Defendant collaborated and worked in concert with the other Defendants to cause such statements or photos to be posted.

12

**Public Perception**

120.    Since the publication of the False and Defamatory Statements, any individual reading the statements might believe that the Plaintiff engaged in criminal conduct.

121.    Since the publication of the False and Defamatory Statements, any individual reading the statements might believe that the Plaintiff hates gay individuals.

122.    Since the publication of the False and Defamatory Statements, any individual reading the statements might believe that the Plaintiff lacks integrity in her employment and profession.

123.    Since the publication of the False and Defamatory Statements, any individual reading the statements might be prejudiced against the Plaintiff in her profession.

124.    Upon information and belief, a significant number of the Plaintiff's colleagues, peers and supervisors have become aware of and read the False and Defamatory Statements.

125.    Patrons of the Orland Park Public Library have become aware of and read the False and Defamatory Statements.

126.    Based on the False and Defamatory Statements, patrons of the Orland Park Public Library have submitted written complaints to the Orland Park Public Library about Ms. Bittman.

**Intent and Actual Malice**

127.    The Defendants acted with intent and actual malice because they intended to harm the Plaintiff.

128.    The foregoing conduct engaged in by the Defendants shall hereinafter be called the Wrongful Conduct.

**Harm**

129.    The Plaintiff has suffered, and continues to suffer, harm arising from the

Defendants' Wrongful Conduct.

130.    The Defendants' Wrongful Conduct has caused the Plaintiff to suffer and

continue to suffer from harmed reputation, humiliation, embarrassment, and emotional distress.

## CLAIMS FOR RELIEF

## <u>COUNT ONE</u>

## <u>AS AND FOR A FIRST CAUSE OF ACTION</u>

## <u>VIOLATION OF COMPUTER FRAUD AND ABUSE ACT</u>

## <u>18 U.S.C. § 1030</u>

## <u>(AGAINST DEFENDANTS FOX and DUJAN)</u>

131.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this First Court as though fully set forth herein.

132.    Defendants Fox and DuJan knowingly and intentionally created the Facebook Page using the Plaintiff's personal information.

133.    Defendants Fox and DuJan knowingly and intentionally created the Facebook Page using the Plaintiff's personal information without the Plaintiff's authorization.

134.    The Plaintiff did not authorize Defendants Fox and DuJan to create the Facebook Page using her personal information.

135.    The Plaintiff did not authorize Defendants Fox and DuJan to create any accounts and/or pages using her personal information.

136.    By creating the Facebook Page, Defendants Fox and DuJan intended to and have impersonated Ms. Bittman and her business.

137.    By intending to impersonate Ms. Bittman and her business, Defendants Fox and DuJan have engaged in fraud.

138.    In creating the Facebook Page, Defendants Fox and DuJan obtained access to computers and servers hosted by Facebook, Inc. ("Facebook").

15

139.    The computers and servers hosted by Facebook are used in and affect interstate commerce.

140.    The computers and servers hosted by Facebook constitute protected computers.

141.    Defendants Fox and DuJan obtained unauthorized access to or exceeded their authorized access to the Facebook protected computers when they created the Facebook Page and impersonated Ms. Bittman and her business.

142.    Defendants Fox and DuJan knowingly and with intent to commit fraud obtained unauthorized access to or exceeded their authorized access to the Facebook protected computers when they created the Facebook Page and impersonated Ms. Bittman and her business.

143.    In obtaining unauthorized access or exceeding their authorized access to the Facebook protected computers for purposes of creating the Facebook Page and impersonating Ms. Bittman and her business, Defendants Fox and DuJan furthered their intended fraud.

144.    In obtaining unauthorized access or exceeding their authorized access to the Facebook protected computers for purposes of creating the Facebook Page and impersonating Ms. Bittman and her business, Defendants Fox and DuJan obtained value in the harassment they caused Ms. Bittman.

145.    In obtaining unauthorized access or exceeding their authorized access to the Facebook protected computers for purposes of creating the Facebook Page and impersonating Ms. Bittman and her business, Defendants Fox and DuJan obtained value in harming Ms. Bittman's reputation.

146.    In obtaining unauthorized access or exceeding their authorized access to the Facebook protected computers for purposes of creating the Facebook Page and impersonating

16

Ms. Bittman and her business, Defendants Fox and DuJan obtained value in obtaining any communications intended for Ms. Bittman.

147.    Every time Defendants Fox and DuJan obtained access to the Facebook Page or any accounts associated therewith, they furthered their fraud.

148.    Defendants Fox and DuJan intended to harm the Plaintiff personally by engaging in the conduct described in this Count One.

149.    The conduct described in this Count One by Defendants Fox and DuJan violates the Computer Fraud and Abuse Act, particularly 18 USC § 1030(a)(4).

150.    The Plaintiff has suffered losses aggregating in more than $5,000 including, but not limited to, the costs of responding to the foregoing violations of the Plaintiff's rights in the form of attorney's fees.

151.    WHEREFORE, based on the violation of the Computer Fraud and Abuse Act by Defendants Fox and DuJan, the Plaintiff seeks:

      A.    An award of compensatory damages against the Defendants pursuant to 18 U.S.C. § 1030(g);

      B.    Injunctive relief in the form of an order:

            i.    compelling Defendants Fox and DuJan to remove the Facebook Page;

            ii.    compelling Defendants Fox and DuJan to delete any communications intended for the Plaintiff obtained through the Facebook Page;

            iii.    permanently enjoining the Defendants from impersonating the Plaintiff and/or her business; and

iv.　　permanently enjoining the Defendants from creating any future accounts using the Plaintiff's name and/or personal information; and,

C.　　Any such other relief to which the Plaintiff may be entitled or as justice may require.

## COUNT TWO

## AS AND FOR A SECOND CAUSE OF ACTION

## VIOLATION OF STORED COMMUNICATIONS ACT

## 18 U.S.C. §§ 2701, *et seq.*

## (AGAINST DEFENDANTS FOX and DUJAN)

152.　　The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Second Count as though fully set forth herein.

153.　　Facebook provides an electronic communication service.

154.　　Facebook provides its electronic communication services through its computers and servers.

155.　　Facebook constitutes a facility through which electronic communications services are provided.

156.　　Defendants Fox and DuJan created one or more accounts and/or Facebook pages using the Plaintiff's personal information.

157.　　Defendants Fox and DuJan created one or more accounts and/or Facebook pages using the Plaintiff's personal information without the Plaintiff's authorization.

158.　　In particular, Defendants Fox and DuJan created the Facebook Page.

159.　　Defendants Fox and DuJan created the Facebook Page without the Plaintiff's authorization.

18

160. By creating one or more accounts and/or Facebook pages using the Plaintiff's personal information without the Plaintiff's authorization, Defendants Fox and DuJan obtained unauthorized access or exceeded their authorized access to Facebook's computers and servers.

161. Defendants Fox and DuJan obtained unauthorized access or exceeded their authorized access to Facebook's computers and servers.

162. By obtaining unauthorized access or exceeding their authorized access to Facebook's computers and servers, Defendants Fox and DuJan obtained unauthorized access or exceeded their authorized access to a facility through which electronic communications services are provided.

163. Defendants Fox and DuJan obtained unauthorized access or exceeded their authorized access to a facility through which electronic communications services are provided.

164. Upon creating accounts and/or Facebook pages using the Plaintiff's personal information, Defendants Fox and DuJan obtained access to such accounts and/or Facebook pages.

165. Upon creating the Facebook Page, Defendants Fox and DuJan obtained administrative access to the Facebook Page.

166. By obtaining access to the accounts and/or Facebook pages created using the Plaintiff's personal information, Defendants Fox and DuJan obtained access to electronic communications intended for the Plaintiff stored in Facebook computers and servers in relation to such accounts and/or Facebook pages.

167. By obtaining administrative access to the Facebook Page, Defendants Fox and DuJan obtained access to electronic communications intended for the Plaintiff stored in Facebook computers and servers in relation to the Facebook Page.

19

168.    Defendants Fox and DuJan did not possess authorization to create accounts and/or Facebook pages using the Plaintiff's personal information, access such accounts and/or Facebook pages, or access the communications stored in Facebook computers and servers in relation to such accounts and/or Facebook pages.

169.    Based on the foregoing, Defendants Fox and DuJan knowingly and/or intentionally accessed without authorization facilities through which electronic communication services are provided, particularly the facilities hosting Facebook accounts and pages, and obtained access to electronic communications intended for the Plaintiff while the electronic communications were in electronic storage in such facilities.

170.    Alternatively, Defendants Fox and DuJan knowingly and/or intentionally exceeded their authorized access to facilities through which electronic communication services are provided, particularly the facilities hosting Facebook accounts and pages, and obtained access to electronic communications intended for the Plaintiff while the electronic communications were in electronic storage in such facilities.

171.    Defendants Fox and DuJan acted willfully and/or intentionally.

172.    As a result of the conduct by Defendants Fox and DuJan described in this Count Two and their violation of the Stored Communications Act, the Plaintiff suffered injuries and damages resulting therefrom that include, but are not limited to, violation of her statutory rights, invasion of her privacy, harassment, and harmed reputation.

173.    Also, the Plaintiff has suffered and continues to suffer irreparable injury for which she has no adequate remedy at law.

174.    WHEREFORE, based on the violation of the Stored Communications Act by Defendants Fox and DuJan, the Plaintiff seeks:

A.   An award of statutory damages against Defendants Fox and DuJan pursuant to 18 U.S.C. § 2707;

B.   An award of punitive damages against Defendants Fox and DuJan in an amount to be determined at trial.

C.   An award of costs of suit, including attorneys' fees;

D.   Injunctive relief in the form of an order:

   i.   permanently enjoining the Defendants from accessing stored communications of the Plaintiff from any account and/or page;

   ii.   permanently enjoining the Defendants from accessing and/or attempting to access the Plaintiff's electronic mail accounts; and,

   iii.   requiring the Defendant to permanently erase all electronic and other copies of the Plaintiff's stored communications the Defendants obtained unlawfully; and,

E.   Any such other relief to which the Plaintiff may be entitled or as justice may require.

## COUNT THREE
## AS AND FOR A THIRD CAUSE OF ACTION
## VIOLATION OF THE ELECTRONIC COMMUNICATION PRIVACY ACT
## 18 USC §§ 2510, *et seq.*
## (AGAINST DEFENDANTS FOX and DUJAN)

175.   The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Third Count as though fully set forth herein.

176.   Defendants Fox and DuJan created one or more accounts and/or Facebook pages using the Plaintiff's personal information.

21

177.     Upon creating accounts and/or Facebook pages using the Plaintiff's personal information, Defendants Fox and DuJan obtained access to such accounts.

178.     By obtaining access to the accounts and/or Facebook pages created using the Plaintiff's personal information, Defendants Fox and DuJan intercepted electronic communications intended for the Plaintiff at such accounts and/or pages.

179.     Defendants Fox and DuJan intentionally intercepted electronic communications intended for the Plaintiff.

180.     Defendants Fox and DuJan intentionally intercepted electronic communications intended for the Plaintiff each time they received an electronic communication intended for the Plaintiff.

181.     Upon information and belief, Defendants Fox and DuJan intentionally intercepted electronic communications intended for the Plaintiff on many occasions.

182.     In doing so, Defendants Fox and DuJan intentionally used an electronic device to acquire the contents of electronic communications intended for the Plaintiff.

183.     Upon information and belief, Defendants Fox and DuJan intentionally used the intercepted electronic communications intended for the Plaintiff knowing the electronic communications to have been intercepted.

184.     Upon information and belief, Defendants Fox and DuJan intentionally used the intercepted electronic communications intended for the Plaintiff to harm her knowing the electronic communications to have been intercepted.

185.     As a direct and proximate result of the conduct by Defendants Fox and DuJan described in this Count Three, the Plaintiff has suffered and continues to suffer damages.

186.    The Plaintiff has suffered and continues to suffer damages including, but not limited to, invasion of her privacy and the costs and expenses of pursuing her remedies.

187.    By engaging in the conduct described in this Count Three, Defendants Fox and DuJan violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §2510, *et seq*.

188.    Defendants Fox and DuJan violated the ECPA on more than one day.

189.    In particular, Defendants Fox and DuJan violated the ECPA each day that they intercepted communications intended for the Plaintiff.

190.    WHEREFORE, based on the violation of the Electronic Communications Privacy Act by Defendants Fox and DuJan, the Plaintiff seeks:

A.    An award of the greater of actual or statutory damages provided for pursuant to 18 U.S.C. §2520 (b)(2) and (c)(2);

B.    An award of punitive damages pursuant to 18 U.S.C. §2520 (b)(2);

C.    An award of her attorney's fees and costs reasonably incurred pursuant to 18 U.S.C. §2520 (b)(3);

D.    Injunctive relief in the form of an order:

i.    permanently enjoining Defendants Fox and DuJan from intercepting electronic communications intended for the Plaintiff;

ii.    permanently enjoining Defendants Fox and DuJan from accessing and/or attempting to access the Plaintiff's electronic accounts; and,

iii.    requiring Defendants Fox and DuJan to permanently erase all electronic and other copies of the Plaintiff's communications the Defendants obtained unlawfully; and,

E.    Any such other relief to which the Plaintiff may be entitled or as justice

may require.

## COUNT FOUR

## AS AND FOR A FOURTH CAUSE OF ACTION

## DEFAMATION *PER SE*

## (AGAINST ALL DEFENDANTS)

191.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Fourth Count as though fully set forth herein.

192.     The July 8 Video falsely states that the Plaintiff was arrested for breach of peace and disorderly conduct.

193.     The July 8 Video falsely states that the Plaintiff carried a weapon.

194.     The July 8 Video falsely states that the Plaintiff used an anti-gay hateful term.

195.     The July 8 Video falsely states that the Plaintiff called someone a "fruit."

196.     The July 8 Video falsely imputes that the Plaintiff engaged in criminal conduct.

197.     The July 8 Video falsely implies that the Plaintiff lacks integrity in her employment.

198.     The July 8 Video represents the publication of false and defamatory statements of fact by the Defendants about the Plaintiff.

199.     The Original July 8 Caption falsely states that the Plaintiff was cited for breach of peace and disorderly conduct.

200.     The Original July 8 Caption falsely states that the Plaintiff attempted to start a fight.

201.     The Original July 8 Caption falsely states that the Plaintiff used an anti-gay hateful term.

202.     The Original July 8 Caption falsely imputes that the Plaintiff engaged in criminal conduct.

203.     The Original July 8 Caption prejudices the Plaintiff in her employment.

204.     The Original July 8 Caption falsely implies that the Plaintiff lacks integrity in her employment.

205.     The Original July 8 Caption represented the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

206.     The July 8 Caption falsely states that the Plaintiff was cited for breach of the peace and disorderly conduct.

207.     The July 8 Caption falsely states that the Plaintiff engaged in shameful behavior.

208.     The July 8 Caption falsely states that the Plaintiff engaged in highly unprofessional behavior.

209.     The July 8 Caption falsely imputes that the Plaintiff engaged in criminal activity.

210.     The July 8 Caption prejudices the Plaintiff in her employment.

211.     The July 8 Caption falsely implies that the Plaintiff lacks integrity in her employment.

212.     The July 8 Caption represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

213.     The Republication Statement falsely imputes that the Plaintiff attacked a gay man.

214.     The Republication Statement falsely imputes that the Plaintiff engaged in criminal activity.

215.     The Republication Statement prejudices the Plaintiff in her employment.

25

216.    The Republication Statement falsely imputes that the Plaintiff lacks integrity in her employment.

217.    The Republication Statement represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

218.    The foregoing False and Defamatory Statements identify the Plaintiff by name.

219.    Persons other than the Plaintiff and the Defendants would have and actually have reasonably understood that the foregoing False and Defamatory Statements related to and were about the Plaintiff.

220.    The foregoing False and Defamatory Statements identify the Plaintiff's place of employment, thereby prejudicing her in her employment.

221.    The Defendants made the foregoing False and Defamatory Statements on and through the Internet.

222.    By publishing the foregoing False and Defamatory Statements on and through the Internet, the Defendants intentionally published the statements to a wide audience.

223.    The Defendants presented the foregoing False and Defamatory Statements as fact.

224.    The foregoing False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendants to third parties.

225.    The Defendants made the foregoing False and Defamatory Statements with actual malice knowing the falsity of the statements.

226.    If the Defendants did not act with actual malice, they acted with reckless disregard for the falsity of the foregoing False and Defamatory Statements to the detriment of the Plaintiff.

227.    As a result of the Defendants' conduct and the publication of the foregoing False

and Defamatory Statements, the Plaintiff has suffered and continues to suffer damages including, but not limited to harmed reputation, embarrassment, and invasion of her privacy.

228.    WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' *per se* defamation of her.

**COUNT FIVE**

**AS AND FOR A FIFTH CAUSE OF ACTION**

**FALSE LIGHT**

**(AGAINST ALL DEFENDANTS)**

229.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Fifth Count as though fully set forth herein.

230.    The Defendants published the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements concerning the Plaintiff to third parties.

231.    The Defendants published the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements to a wide audience on the Internet.

232.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements identified the Plaintiff by name.

233.    Persons other than the Plaintiff and the Defendants would and actually have reasonably understood that the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements related to and were about the Plaintiff.

234.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements cast the Plaintiff in a false light by falsely portraying her as lacking integrity in her employment.

235.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements cast the Plaintiff in a false light by falsely portraying her as lacking the

abilities to perform in her employment.

236. The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements cast the Plaintiff in a false light by falsely imputing criminal conduct.

237. The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements prejudice the Plaintiff in her employment.

238. The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements made by the Defendants about the Plaintiff are and would be highly offensive to a reasonable person.

239. The Defendants made the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements with actual malice, knowing the falsity of the statements.

240. As a result of the Defendants' casting the Plaintiff in a false light, the Plaintiff has suffered and continues to suffer damages including, but not limited to, suffering, harmed reputation, embarrassment, and emotional distress.

241. WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' portrayal of her in a false light.

<u>**COUNT SIX**</u>

<u>**AS AND FOR A SIXTH CAUSE OF ACTION**</u>

<u>**ASSAULT**</u>

<u>**(AGAINST DEFENDANT DUJAN)**</u>

242. The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Sixth Count as though fully set forth herein.

243.    On May 19, 2014, the Orland Park Public Library Board of Directors held a public meeting ("Board Meeting").

244.    Ms. Bittman attended the Board Meeting.

245.    Some of the Defendants attended the Board Meeting.

246.    In particular, Defendant DuJan attended the Board Meeting.

247.    During the Board Meeting, Defendant Fox began to disrupt the Board Meeting.

248.    Some of the Defendants had previously disrupted meetings of the Orland Park Public Library Board of Directors.

249.    Based on prior disruptions, Ms. Bittman had been advised to call the Orland Park Police Department should a future disruption occur.

250.    Because of the disruptions, Ms. Bittman proceeded to the back of the room in which the Board Meeting occurred.

251.    Ms. Bittman proceeded to the back of the room to dial 9-1-1 and call the Orland Park Police Department.

252.    Defendant DuJan and another male followed and approached Ms. Bittman as she dialed 9-1-1.

253.    Defendant DuJan placed Ms. Bittman in reasonable apprehension of imminent, offensive contact with her person.

254.    Defendant DuJan had the apparent ability to engage in harmful and offensive conduct with the Plaintiff.

255.    The Plaintiff's apprehension of imminent, offensive contact with her person during the incident with Defendant DuJan was reasonable.

29

256.     As Defendant DuJan and another male approached her, Ms. Bittman entered a private room adjacent to the meeting room using a security badge.

257.     Ms. Bittman entered the private room to complete the 9-1-1 call in private.

258.     Upon Ms. Bittman entering the private room, Defendant DuJan hung up the 9-1-1 call that Ms. Bittman had placed.

259.     Defendant DuJan's actions during the incident constitute civil assault.

260.     WHEREFORE, the Plaintiff seeks recovery of compensatory and punitive damages arising from Defendant DuJan's assault of her.

**COUNT SEVEN**

**AS AND FOR A SEVENTH CAUSE OF ACTION**

**DEFAMATION *PER SE***

**(AGAINST DEFENDANTS FOX, DUJAN and KLIENMAN)**

261.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Seventh Count as though fully set forth herein.

262.     The Police Report Statement falsely states that the Plaintiff wrongfully files police reports in the course of her employment at the Orland Park Public Library.

263.     The Police Report Statement falsely states that the Plaintiff uses the police department as a weapon of intimidation.

264.     The Police Report Statement falsely states that the Plaintiff engages in criminal activity.

265.     The Police Report Statement represents the publication of a false and defamatory statement of fact by the Defendant about the Plaintiff.

266.     The Google Photo Statement falsely implies that the Plaintiff drinks alcohol while working in her official capacity at the Orland Park Public Library.

267. The Google Photo Statement falsely imputes that the Plaintiff lacks integrity in her profession.

268. The Google Photo Statement represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

269. The Gay Hater Statement falsely implies that the Plaintiff is a homophobic.

270. The Gay Hater Statement prejudices the Plaintiff in her employment.

271. The Gay Hater Statement falsely implies that the Plaintiff lacks integrity in her employment.

272. The Gay Hater Statement represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

273. The Defendants presented the foregoing False and Defamatory Statements as fact.

274. The foregoing False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendants to third parties.

275. The Defendants made the foregoing False and Defamatory Statements with actual malice knowing the falsity of the statements.

276. If the Defendants did not act with actual malice, they acted with reckless disregard for the falsity of the foregoing False and Defamatory Statements to the detriment of the Plaintiff.

277. As a result of the Defendants' conduct and the publication of the statements, the Plaintiff has suffered and continues to suffer damages including, but not limited to harmed reputation, embarrassment, and, invasion of her privacy.

278. WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' *per se* defamation of her.

**COUNT EIGHT**

**AS AND FOR A EIGHT CAUSE OF ACTION**

**FALSE LIGHT**

**(AGAINST DEFENDANTS FOX, DUJAN and KLEINMAN)**

279.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Eighth Count as though fully set forth herein.

280.    Defendants Fox, DuJan, and Kleinman published the Police Statement, the Google Photo Statement, and the Gay Hater Statement concerning the Plaintiff to third parties.

281.    The Defendants published the Police Statement, the Google Photo Statement, and the Gay Hater Statement to a wide audience on the Internet.

282.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement identified the Plaintiff by name.

283.    Persons other than the Plaintiff and the Defendants would and actually have reasonably understood that the Police Statement, the Google Photo Statement, and the Gay Hater Statement related to and were about the Plaintiff.

284.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement cast the Plaintiff in a false light by falsely portraying her as lacking integrity in her employment.

285.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement cast the Plaintiff in a false light by falsely portraying her as lacking the abilities to perform in her employment.

286.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement prejudice the Plaintiff in her employment.

287.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement cast the Plaintiff in a false light by falsely imputing criminal conduct.

32

288.     The Police Statement, the Google Photo Statement, and the Gay Hater Statement made by Defendants Fox, DuJan and Kleinman about the Plaintiff are and would be highly offensive to a reasonable person.

289.     Defendants Fox, DuJan and Kleinman made the Police Statement, the Google Photo Statement, and the Gay Hater Statement with actual malice, knowing the falsity of the statements.

290.     As a result of Defendants Fox, DuJan and Kleinman's casting the Plaintiff in a false light, the Plaintiff has suffered and continues to suffer damages including, but not limited to, suffering, harmed reputation, embarrassment, and emotional distress.

291.     WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from Defendants' portrayal of her in a false light.

## COUNT NINE

## AS AND FOR A NINTH CAUSE OF ACTION

## DEFAMATION *PER SE*

## (AGAINST DEFENDANTS FOX and DUJAN)

292.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Ninth Count as though fully set forth herein.

293.     The statements and posts on the Facebook Page falsely imply that the Plaintiff is prejudiced against gay individuals.

294.     The statements and posts on the Facebook Page falsely impute that the Plaintiff engages in criminal conduct.

295.     The statements and posts on the Facebook Page falsely impute that the Plaintiff and her floral design business are unprofessional.

296.    The statements and posts on the Facebook Page falsely impute that the Plaintiff and her floral design business lack integrity.

297.    The statements and posts on the Facebook Page identify the Plaintiff's business, thereby prejudicing her in her floral design business.

298.    The foregoing False and Defamatory Statements represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

299.    The foregoing False and Defamatory Statements identify the Plaintiff by her photograph.

300.    Persons other than the Plaintiff and the Defendants would have and actually have reasonably understood that the foregoing False and Defamatory Statements related to and were about the Plaintiff.

301.    Defendants Fox and DuJan made the foregoing False and Defamatory Statements on and through the Internet.

302.    By publishing the foregoing False and Defamatory Statements on and through the Internet, Defendants Fox and DuJan intentionally published the statements to a wide audience.

303.    The Defendants presented foregoing False and Defamatory Statements as fact.

304.    The foregoing False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendants Fox and DuJan to third parties.

305.    Defendants Fox and DuJan made the foregoing False and Defamatory Statements with actual malice knowing the falsity of the statements.

306.    If Defendants Fox and DuJan did not act with actual malice, they acted with reckless disregard for the falsity of the foregoing False and Defamatory Statements to the detriment of the Plaintiff.

34

307.     As a result of the Defendants' conduct and the publication of foregoing False and Defamatory Statements, the Plaintiff has suffered and continues to suffer damages including, but not limited to harmed reputation, embarrassment, and, invasion of her privacy.

308.     WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' *per se* defamation of her.

**COUNT TEN**

**AS AND FOR A TENTH CAUSE OF ACTION**

**FALSE LIGHT**

**(AGAINST DEFENDANTS FOX and DUJAN)**

309.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Tenth Count as though fully set forth herein.

310.     Defendants Fox and DuJan, published the statements and posts on the Facebook Page concerning the Plaintiff to third parties.

311.     The Defendants published the statements and posts on the Facebook Page to a wide audience on the Internet.

312.     The statements and posts on the Facebook Page identified the Plaintiff through use of her photograph.

313.     Persons other than the Plaintiff and the Defendants would and actually have reasonably understood that the statements and posts on the Facebook Page related to and were about the Plaintiff.

314.     The statements and posts on the Facebook Page cast the Plaintiff in a false light by falsely portraying her as lacking integrity in her floral design business.

315.     The statements and posts on the Facebook Page cast the Plaintiff in a false light by falsely portraying her as lacking the abilities to perform in her floral design business.

316.    The statements and posts on the Facebook Page prejudice the Plaintiff in her floral design business.

317.    The statements and posts on the Facebook Page made by Defendants Fox and DuJan about the Plaintiff are and would be highly offensive to a reasonable person.

318.    Defendants Fox and DuJan made the statements and posts on the Facebook Page with actual malice, knowing the falsity of the statements.

319.    As a result of Defendants Fox and DuJan's casting the Plaintiff in a false light, the Plaintiff has suffered and continues to suffer damages including, but not limited to, suffering, harmed reputation, embarrassment, and emotional distress.

320.    WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from Defendants' portrayal of her in a false light.

## COUNT ELEVEN

## AS AND FOR AN ELEVENTH CAUSE OF ACTION

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

## (AGAINST DEFENDANTS FOX and DUJAN)

321.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Eleventh Count as though fully set forth herein.

322.    Defendants Fox and DuJan engaged in the Wrongful Conduct to cause the Plaintiff severe emotional distress.

323.    The Wrongful Conduct engaged in by Defendants Fox and DuJan was extreme and outrageous.

324.    The Wrongful Conduct engaged in by Defendants Fox and DuJan was so outrageous that it cannot be tolerated by civilized society.

325.    The Wrongful Conduct engaged in by Defendants Fox and DuJan rises to a level of behavior that exceeds all possible bounds of decency.

326.    The Wrongful Conduct engaged in by Defendants Fox and DuJan proximately caused the Plaintiff to suffer severe emotional distress.

327.    The Plaintiff has had to seek medical care for her severe emotional distress resulting from the continued harassment of her by Defendants Fox and DuJan.

328.    By being subjected to the harassing behavior of Defendants Fox and DuJan for months, the Plaintiff was and is regularly experiencing physical manifestations of her severe emotional distress.

329.    WHEREFORE, the Plaintiff seeks recovery of compensatory damages, punitive damages, and costs arising from the Defendants' intentional infliction of emotional distress upon her.

## COUNT TWELVE

## AS AND FOR AN TWELFTH CAUSE OF ACTION

## INJUNCTIVE RELIEF

## (AGAINST ALL DEFENDANTS)

330.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 130 above in this Twelfth Count as though fully set forth herein.

331.    The Plaintiff possesses a clearly ascertainable right and/or protectable interest in not having her privacy violated by the Defendants.

332.    The Plaintiff possesses a clearly ascertainable right and/or protectable interest in not being harassed by the Defendants.

333.    The Plaintiff has suffered and will continue to suffer irreparable harm if this Court does not enjoin the Defendants from violating her privacy.

334.    The Plaintiff has suffered and will continue to suffer irreparable harm if this Court does not enjoin the Defendants from harassing the Plaintiff.

335.    The Plaintiff will suffer irreparable harm in the absence of injunctive relief.

336.    In contrast, the Defendants will suffer no harm because they have no legal right to engage in the Wrongful Conduct.

337.    The Plaintiff can clearly demonstrate some likelihood of success on the merits of her claims.

338.    Mere compensation at law can only possibly provide the Plaintiff with compensation for her injuries up to the present.

339.    It remains difficult if not impossible to calculate the damages arising from the Defendants' continued harassment of the Plaintiff.

340.    The Plaintiff therefore has an inadequate remedy at law.

341.     The public interest will not be harmed if an injunction is granted.

342.     WHEREFORE, the Plaintiff seeks a temporary and permanent injunction enjoining the Defendants from:

        A.  Using her name or likeness;

        B.  Impersonating her;

        C.  Creating any profiles, accounts and/or pages in her name;

        D.  Harassing her in any capacity;

        E.  Cyberstalking her; and,

        F.  Coming within 1000 feet of her home.

## **GENERAL**

343.     Where conditions precedent are alleged, the Plaintiff avers that all conditions precedent have been performed or have occurred.

344.     The Plaintiff demands a jury trial.

## <u>REQUEST FOR RELIEF</u>

WHEREFORE, PLAINTIFF BRIDGET BITTMAN accordingly and respectfully seeks judgment against DEFENDANTS MEGAN FOX, KEVIN DUJAN, DAN KLIENMAN, ADAM ANDRZEJEWSKI, and FOR THE GOOD OF ILLINOIS as follows:

1.      That PLAINTIFF BRIDGET BITTMAN be awarded statutory damages in an amount to be determined at trial;

2.      That PLAINTIFF BRIDGET BITTMAN be awarded compensatory damages in an amount to be determined at trial;

3.      That PLAINTIFF BRIDGET BITTMAN be awarded punitive damages in an amount to be determined at trial;

4.      That PLAINTIFF BRIDGET BITTMAN be awarded her legal fees (including, but not limited to, attorney's fees, paralegal fees, costs, expenses and/or any related fees) in this action;

5.      That PLAINTIFF BRIDGET BITTMAN be awarded the injunctive relief sought; and,

6.      That PLAINTIFF BRIDGET BITTMAN be awarded any such other and further relief to which she may be entitled as a matter of law or equity or as this Court may deem just and proper.

Dated: Chicago, Illinois    Respectfully submitted,
   October 20, 2014    PLAINTIFF
           BRIDGET BITTMAN,


           s/Meghan K. Nugent
      By: One of Her Attorneys
        Meghan K. Nugent
        Mudd Law Offices
        3114 West Irving Park Road
        Suite 1W
        Chicago, Illinois 60618
        773.588.5410 Telephone
        773.588.5440 Facsimile
        Illinois ARDC: 6313620
        mkn@muddlaw.com

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| BRIDGET BITTMAN, | ) | |
| | ) | COMPLAINT |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No.: |
| MEGAN FOX, an individual; KEVIN DUJAN, | ) | |
| an individual; DAN KLEINMAN, | ) | |
| an individual; ADAM ANDRZEJEWSKI, an | ) | |
| individual; and, FOR THE GOOD OF | ) | |
| ILLINOIS, an Illinois Not for Profit | ) | |
| Organization, | ) | |
| | ) | |
| Defendants. | ) | JURY DEMAND |

**JURY DEMAND**

Plaintiff Bridget Bittman demands trial by jury.

s/Meghan K. Nugent
Meghan K. Nugent