# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIDGET BITTMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 14 C 8191 |
| MEGAN FOX, KEVIN DUJAN, ) | |
| DAN KLEINMAN, ADAM ANDRZEJEWSKI, ) | |
| and FOR THE GOOD OF ILLINOIS, ) | |
| an Illinois Not for Profit Organization, ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

Plaintiff Bridget Bittman filed several alleged claims under federal and Illinois law against defendants Megan Fox, Kevin DuJan, Dan Kleinman, Adam Andrzejewki, and For the Good of Illinois.[1] (Dkt. No. 34 ("Am. Compl.")) Defendants Fox and DuJan have moved to dismiss Bittman's federal claims under the Computer Fraud and Abuse Act (Count I) and the Stored Communications Act (Count II), as well as her state law claims for civil assault (Count VII), defamation per se (Count X), false light (Count XI), intentional infliction of emotional distress (Count XII), and injunctive relief (Count XIII) for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 36 ("Defs.' Mot.").) For the reasons explained below, defendants' motion is granted.

---

[1] On May 22, 2015, counsel for defendants Adam Andrzejewski and For the Good of Illinois informed the court that they have settled all of Bittman's claims against them.

## RELEVANT FACTUAL BACKGROUND

Bittman is employed by the Orland Park Public Library, where she provides marketing and public relations services. (Am. Compl. ¶¶ 17, 18.) In the fall of 2013, Megan Fox and Kevin DuJan complained that the Orland Park Public Library provided unfiltered access to the Internet and began efforts to change this policy. (*Id.* at ¶¶ 26, 28.) In her capacity as a representative of the Orland Park Public Library, Bittman publicly responded to defendants' complaints. (*Id.* at ¶ 27.)

Bittman alleges that as early as November 4, 2013, the Fox and DuJan began making and causing to be made numerous false and defamatory statements about her. (*Id.* at ¶ 35.) On May 18, 2014, Fox posted the following comments on the Fans of Megan Fox Facebook Page:

> I wonder at what point in their presentation at the Hatefest that Mary Weimar and Bridget Bittman taught the other public employees in attendance about using the police as a weapon against their perceived enemies in the "opposition." Do you know that the Orland Park Public Library Board contacted the police SIX TIMES in total to make false police complaints against me (and a few times against Kevin too)…
>
> The Police laughed at all of these people, but sadly the police never charged any of them with disorderly conduct for making false police reports. They should have been charged.

(*Id.* at ¶¶ 36,37.)

On May 19, 2014, the Orland Park Public Library Board of Directors held a public meeting, which Bittman, Fox, and DuJan attended. (*Id.* at ¶¶ 277-279.) Following a disruption caused by Fox, Bittman proceeded to the back of the meeting room to call the Orland Park Police Department. (*Id.* at ¶¶ 280-284.) As Bittman dialed 9-1-1, DuJan and another male followed and approached her, which placed her in "apprehension of immediate, offensive contact." (*Id.* at ¶¶ 285-287.)

On June 12, 2014, Fox posted a photograph, which she apparently obtained from an Internet search, of Bittman holding a champagne bottle on the Fans of Megan Fox Facebook Page. (*Id.* at ¶ 39.) In a comment to the post, Fox stated:

> [Bittman] would have to be drunk to claim the ridiculous things she does about the library in the media
>
> "Sober up Bridget [t]he truth will set you free!"

(*Id.* at ¶ 40.)

On June 18, 2014, Defendant Fox posted photographs of Ms. Bittman's home on the Internet. (*Id.* at ¶ 44.) Bittman alleges that Fox and DuJan traveled to her home to take the photos and later posted them in an attempt to harass and intimidate her. (*Id.* at ¶¶ 44-52.)

On July 8, 2014, Fox published a video on YouTube and titled the video "Bridget Bittman commits Disorderly Conduct/Breach of Peace on 7/8/14 according to Officer Schmidt." (*Id.* at ¶¶ 53-54.) Bittman alleges that Fox and DuJan posted several captions to the video that contain defamatory statements about her. (*Id.* at ¶¶ 53-89.)

On or about July 10, 2014, Defendants Fox and DuJan created a Facebook Page entitled "Sassy Plants Illinois" ("Sassy Plants Facebook Page") to impersonate Bittman and her floral arrangement business. (*Id.* at ¶¶ 101-103.) Fox and DuJan posted Bittman's personal photos as well as photos of her floral arrangements without her authorization on the Sassy Plants Facebook Page. (*Id.* at ¶¶ 105-109.) Fox and DuJan also posted statements intended to convince people that Bittman actually operates the Facebook Page. (*Id.* ¶¶ 102-115.) Additionally, Fox and DuJan included references to "fruits" as a derogatory term for homosexuals, falsely implying that Bittman is prejudiced against homosexuals. (*Id.* at ¶ 124.)

On January 21, 2015, Bittman filed her thirteen-count complaint alleging claims under federal and Illinois law against defendants Fox and DuJan. Fox and DuJan have moved to

3

dismiss several claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot.)

## LEGAL STANDARD

Under the Federal Rules of Civil Procedure, a complaint need contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Although "detailed factual allegations" are not required, "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly,* 550 U.S. at 555. The complaint must "include sufficient facts 'to state a claim for relief that is plausible on its face.'" *Cole v. Milwaukee Area Tech. Coll. Dist.*, 634 F.3d 901, 903 (7th Cir. 2011) (quoting *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In ruling on a Rule 12(b)(6) motion, the court "construe[s] the . . . [c]omplaint in the light most favorable to Plaintiff, accepting as true all well-pleaded facts and drawing all possible inferences in his favor." *Cole*, 634 F.3d at 903.

## ANALYSIS

I. **The Computer Fraud and Abuse Act and Stored Communications Act**

In Counts I and II, Bittman asserts claims against Fox and DuJan under the Computer Fraud and Abuse Act ("CFAA"), 18 USC § 1030, and the Stored Communications Act ("SCA"), 18 U.S.C. § 2707. The CFAA prohibits individuals from intentionally accessing secure computers without authorization and damaging the computer or data. *See* 18 U.S.C. § 1030. Though primarily a criminal statute, the CFAA provides a private right of action for "[a]ny person who suffers damage or

4

loss by reason of a violation of this section ..." 18 U.S.C. § 1030(g). The SCA provides private right of action to any "aggrieved" party against a defendant who "intentionally accesses without authorization" or "intentionally exceeds an authorization to access" a "facility through which an electronic communication service is provided ... and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system." 18 U.S.C. § 2701(a)(1)-(2); *see* § 2707(a) (providing private right of action).

Bittman asks the court to find that Fox and DuJan are liable under the CFAA and the SCA not for accessing Bittman's own personal computer or social media account without authorization, rather that they are liable for creating the Sassy Plants Facebook Page in violation of Facebook's terms of use. (*Id.*) Bittman argues that by creating the fake Sassy Plants Facebook Page using photographs of her and her floral arrangements, Fox and DuJan violated Facebook's terms of use, thereby exceeding authorized access to Facebook's computers. (Dkt. No. 65 (Pl.'s Resp.) at 4-6.) Yet Bittman presents no precedent suggesting that either the CFAA or the SCA provides her with a cause of action for the alleged conduct, and the court is aware of no such precedent.

The statutory purpose of the CFAA is to punish trespassers and hackers. *See Kluber Skahan & Associates, Inc. v. Cordogen, Clark & Assoc., Inc.*, No. 08-CV-1529, 2009 WL 466812, at *8 (N.D. Ill. Feb. 25, 2009); *Int'l Airport Centers, L.L.C. v. Citrin*, 440 F.3d 418, 420 (7th Cir. 2006) ("Congress was concerned with … attacks by virus and worm writers, on the one hand, which come mainly from the outside, and attacks by disgruntled programmers who decide to trash the employer's data system on the way out…"). Likewise, "Congress enacted the relevant provision of the SCA…to protect privacy interests in personal and proprietary information from the mounting threat of computer hackers 'deliberately gaining access to, and sometimes tampering with, electronic or wire communications' by means of electronic trespass." *Devine v. Kapasi*, 729 F. Supp. 2d 1024, 1026 (N.D. Ill. 2010) (citation omitted). This court is

not persuaded that the either the CFAA or the SCA were enacted to punish the creation of a fake social media account in violation of a social media company's terms of service. *See Matot v. CH*, 975 F. Supp. 2d 1191, 1196 (D. Or. 2013) ("[T]he rule of lenity precludes application of the CFAA … to defendants' alleged creation of fake social media profiles in violation of social media websites terms of use."); *United States v. Drew*, 259 F.R.D. 449, 467 (C.D. Cal. 2009) ("[I]f any conscious breach of a website's terms of service is held to be sufficient by itself to constitute intentionally accessing a computer without authorization or in excess of authorization, the result will be that [the CFAA] becomes a law that affords too much discretion to the police and too little notice to citizens who wish to use the Internet.") (quotations and citations omitted).

Even assuming that Fox and DuJan violated Facebook's terms of use by creating a fake social media account to impersonate Bittman, such conduct does not constitute access "without authorization" or "exceeding authorized access" as envisioned by the CFAA or the SCA. Fox and DuJan are not hackers, nor are they virus or worm writers. They did not access a computer to damage, steal, or tamper with Bittman's data. Because the facts as alleged in Bittman's complaint cannot support a claim under the CFAA or the SCA, defendants' motion to dismiss Claims I and II is granted.

## II. State Law Claims

### A. Civil Assault

In Count VII, Bittman brings an assault claim against DuJan. To survive dismissal, an assault claim must include an allegation that the defendant's intentional conduct placed the plaintiff in reasonable apprehension of imminent battery." *McNeil v. Carter*, 742 N.E.2d 1277, 1281 (Ill. App. 2001). Bittman alleges that on May 19, 2014, the Orland Park Public Library Board of Directors held a public meeting, which Bittman, Fox, and DuJan attended. (Am. Compl.

6

¶¶ 277-279.) Following a disruption caused by Fox, Bittman proceeded to the back of the meeting room to call the Orland Park Police Department. (*Id.* at ¶¶ 280-284.) As Bittman dialed 9-1-1, DuJan and another male followed and approached her, which placed her in "apprehension of immediate, offensive contact." (*Id.* at ¶¶ 285-287.) Bittman responded by using her badge to enter an adjacent private meeting room. (*Id.* at ¶ 289.) Once Bittman was in the private meeting room, DuJan hung up the 9-1-1 call that Bittman initially placed. (*Id.* at ¶ 291.)

Under this set of facts, the court finds that Bittman has failed to allege any conduct that would indicate DuJan was about to attack her. Bittman does not allege that DuJan made any verbal threats or menacing gestures. Rather, the only conduct that Bittman describes is that Dujan and another male "followed and approached" her across a public meeting room, and that he hung up the telephone after Bittman had entered a secure room. Given the history of DuJan's vitriolic campaign against the Orland Park Public Library's policy and his alleged harassment of Bittman, she may have feared that DuJan's actions may one day turn violent, "but a victim's fear… cannot transform a remote threat into an assault." *Kijonka v. Seitzinger*, 363 F.3d 645, 648 (7th Cir. 2004) (finding that a necessary ingredient for assault is a threatening gesture or an otherwise innocent gesture made threatening by accompanying words). Bittmans's conclusory allegation that DuJan's conduct placed her in imminent apprehension of harmful and offensive contact is not supported by her factual allegations. Accordingly, Count VII for assault fails to state a claim upon which relief can be granted.

### B. Defamation Per Se

In Count X, Bittman brings a claim of defamation per se against Fox and DuJan in relation to their creation of the Sassy Plants Facebook Page. To state a claim for defamation under Illinois law, Bittman must present facts showing that the defendants made a false statement about her,

7

that the defendants made an unprivileged publication of that statement to a third party, and that this publication caused damages. *See Green v. Rogers*, 917 N.E.2d 450, 459 (Ill. 2009). A statement is defamatory per se if its harm is obvious and apparent on its face. *Id.* In Illinois, there are five categories of statements that are considered defamatory per se: (1) commission of a criminal offense; (2) infection with a venereal disease; (3) inability to perform or want of integrity in the discharge of duties of public office; (4) fornication or adultery; or (5) words that prejudice a party in her trade, profession, or business. *Bryson v. News America Publications, Inc.*, 672 N.E.2d 1207, 1214-1215 (Ill. 1996).

Bittman argues that Fox and DuJan created the Sassy Plants Facebook Page to make it appear to be the website of her floral design business, and that several statements posted on the page are actionable as defamation per se because they are wrongfully attributed to her and impute a lack of integrity and professionalism onto her and her business. (Pl. Resp. at 7-9) Specifically, Bittman alleges that Fox and DuJan published the following statements on the Sassy Plants Facebook Page:

1) "Sassiness is guaranteed." (Am. Compl. ¶ 113.)
2) "[Y]ou should have a Sassy Plants Booth at your next big event including birthday part[ies],wedding[s], graduation[s], funeral[s], or whatever." (Pl. Resp. at 3.)
3) "Do you even have what it takes to arrange flowers this good? Probably not. You probably shouldn't even try because if you fail people will laugh at you. Sorry but it's true." (Am. Compl. ¶ 114.)

Bittman also alleges that Fox and DuJan's posts to the Facebook page contained repeated distasteful references to individuals and objuects as "fruits," which falsely implies that Bittman is

prejudiced against gay individuals and illegally discriminates against gay individuals. (*Id.* at ¶ 125.)

Bittman is not required to recite the alleged defamatory statements verbatim, but the substance of any statement must be pleaded with "sufficient precision and particularity so as to permit initial judicial review of its defamatory content." *Green*, 917 N.E.2d 450, 459. With regard to the "fruit" statements, Bittman merely asserts that defendants' repeated use of the term "fruit" on the Sassy Plants Facebook Page falsely implies that she is prejudiced against gay individuals, but she points to no specific example. The term "fruit" lends itself to various interpretations depending on the context. Bittman has failed to provide the context in which Fox and DuJan used the term. Accordingly, the unidentified "fruit" statements cannot support a claim for defamation per se. *See Green*, 917 N.E.2d at 460 (allegations that plaintiff "exhibited a long pattern of misconduct with children" and "abused players, coaches, and umpires" are a "summary of the types of statements," not a "precise and particular account of the [allegedly defamatory] statements").

With the unidentified "fruit" statements cast aside, the court finds that the three remaining statements quoted above are not highly offensive such that they should be considered defamation per se. *See Kolegas v. Heftel Broadcasting Corp.*, 607 N.E.2d 201, 206 (1992*)* ("Statements are considered defamatory per se when the defamatory character of the statement is apparent on its face; that is, when the words used are so obviously and materially harmful to the plaintiff that injury to his reputation may be presumed."). The statements that Fox and DuJan posted on the Sassy Plants Facebook Page, even if wrongly attributed to Bittman, do not obviously impute to her or her business a lack of professionalism.

Even if the statements were defamatory per se, they are not actionable because they are susceptible to an innocent construction. "It is well settled that, even if an alleged statement falls into one of the categories of words that are defamatory per se, it will not be actionable per se if it is reasonably capable of an innocent construction." *Green*, 917 N.E.2d at 463 (dismissing plaintiff's defamation per se claim because statements that plaintiff committed "abuse" and "misconduct with children" were capable of innocent construction). The meaning of a statement is not a fact for the jury to find, but a question of law to be resolved by the court. *See Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009). And while the court must take all well-pleaded allegations in a complaint as true, the court need not "take the plaintiff's interpretation of the allegedly defamatory words at face value." *Id.* at 569. Here, the court does not strain to view the Sassy Plants Facebook Page as a mocking impersonation of Bittman and her floral business. To further the impersonation, Fox and DuJan added the type of statements one might expect to find on a small business' Facebook page. Viewed in this context, the alleged statements can be readily interpreted as innocuous solicitations of customers made by defendants in furtherance of their impersonation.

At its root, Bittman's claim for defamation per se in Count X appears concerned with the "callous, mocking tone" used on the Sassy Plants Facebook Page. (Am. Compl. ¶ 125.) She believes the website reflects poorly on her and her floral design business. But it is not enough that statements posted on the website are wrongfully attributed to Bittman, the statements must be defamatory per se. Because Bittman has failed to specifically allege any defamatory per se statements that are not susceptible to an innocent construction, her claim for defamatory per se is dismissed.

### C. False Light

In Count XI, Bittman brings a false light claim against Fox and DuJan. The false light tort protects the "interest in being free from false publicity." *Moriarty*, N.E.2d at 741 (Ill. App. Ct. 2000). To state a claim for false light, the allegations in the complaint must first show that the plaintiff was placed in a false light before the public as a result of the defendant's actions, that the false light would be highly offensive to a reasonable person, and that the defendant acted with actual malice. *Kolegas*, 607 N.E.2d at 209-210.

Defendants argue that Bittman's false light claim should be dismissed on the same grounds they raised with respect to her defamation *per se* claim. "While it is not necessary to be defamed to maintain a false light claim, the similarities between defamation and false light claims may make certain restrictions and limitations for defamation equally applicable to false light claims." *Moriarty*, 732 N.E.2d at 741-742. And if a false light claim is based on statements that are not defamatory per se, special damages too must be pleaded. *Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 927 (7th Cir. 2003).

The court has already determined that Bittman failed to allege any statements that are defamatory per se. Viewing the facts and all reasonable inferences in Bittman's favor, she has failed to sufficiently allege a false light claim because she has not alleged special damages. *See Muzikowski*, 322 F.3d at 927. A pleading of special damages requires extrinsic facts that show actual damage to reputation and pecuniary loss resulting from the defamatory statement. *Dornhecker v. Ameritech Corp.*, 99 F.Supp.2d 918, 933 (N.D. Ill. 2000) (citing *Bryson*, 672 N.E.2d at 1214). In her Amended Complaint, Bittman alleged only "suffering, harmed reputation, embarrassment, and emotional distress." (Am. Compl. ¶ 353.) Such conclusory allegations do not constitute a pleading of special damages. Accordingly, defendants' motion to

dismiss Count XI is granted.

### D. Intentional Infliction of Emotional Distress

In Count XII, Bittman brings a state law claim of intentional infliction of emotional distress ("IIED") against Fox and DuJan. Fox and DuJan argue that Bittman has failed to adequately plead her IIED claim because she has not alleged facts establishing that any of the defendants' conduct was extreme and outrageous. Under Illinois law, a plaintiff must prove that: "(1) the defendants' conduct was extreme and outrageous; (2) the defendants knew that there was a high probability that their conduct would cause severe emotional distress; and (3) the conduct in fact caused severe emotional distress." *Swearnigen–El* v. *Cook Cty. Sheriff's Dept.*, 602 F.3d 852, 864 (7th Cir. 2010). "To meet the 'extreme and outrageous' standard, the defendants' conduct 'must be so extreme as to go beyond all possible bounds of decency, and to be regarded as intolerable in a civilized community.'" *Id.* (quoting *Kolegas,* 607 N.E.2d at 211). Whether conduct is extreme and outrageous "necessarily depends on the facts of each case." *Ulm v. Mem. Med. Ctr.*, 964 N.E.2d 632, 641 (Ill. App. 2012).

Here, Bittman alleges that defendants repeatedly defamed her. Fox and DuJan made statements falsely imputing criminal conduct to her. (Am. Compl. ¶ 60.) They made statements falsely accusing her of discriminatory conduct. (*Id.* at ¶ 127.) Fox and DuJan also used a photo obtained from the Internet in which Bittman is drinking a glass of champagne to claim that she drinks at work. (*Id.* at ¶ 127.) In addition to the alleged defamation, Fox and DuJan traveled to Bittman's residence and took photos of her house and posted them on the Internet. (*Id.* at ¶¶ 44-49.) They also created the Sassy Pants Facebook Page to impersonate and defame Bittman's floral arrangement business. (*Id.* at ¶¶ 101-104.)

Assuming Bittman's allegations to be true, the defendants engaged in a pattern of

distasteful, mean-spirited, and vindictive conduct, which surely caused Bittman some degree of frustration and mental anguish. Nonetheless, the court agrees with defendants that the conduct described by Bittman in her Amended Complaint was not "extreme and outrageous, exceeding all bounds of human decency." The standard for an IIED claim is high, and "under no circumstances [do] mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities qualify as outrageous conduct." *Feltmeier* v. *Feltmeier*, 798 N.E.2d 75, 80 (Ill. 2003) (internal citations and quotations omitted). Because Fox and DuJan's failed to allege sufficient extreme and outrageous conduct, defendants' motion to dismiss Count XII is granted.

### E. Injunctive Relief

In Count XIII, Bittman asserts a claim for injunctive relief. Defendants argue that this claim must be dismissed because injunctive relief is a remedy and not a separate claim. (Defs.' Mem. at 14.) Bittman does not address this issue in her response. The court agrees with defendants that an injunction is an equitable remedy, not a separate cause of action. *See CustomGuide v. CareerBuilder, LLC*, 813 F. Supp. 2d 990, 1002 (N.D. Ill. 2011) (dismissing with prejudice a claim for injunction). Accordingly, Bittman's claim for injunctive relief is dismissed. The court expresses no opinion as to whether Bittman may ultimately be entitled to equitable injunctive relief.

### CONCLUSION

For the reasons explained above, the motion to dismiss of defendants Fox and DuJan is granted in part and denied in part. Bittman's federal claims under the CFAA (Count I) and the SCA (Count II) are dismissed. Additionally, Bittman's state law claims for civil assault (Count VII), defamation per se (Count X), false light (Count XI), IIED (Count XII), and injunctive relief (Count XIII) are dismissed. All other claims remain. The answer of defendants Fox and DuJan is

due by June 15, 2015. The case will be reassigned to another United States District Judge because I am retiring from the court today. The parties are strongly encouraged to discuss settlement.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: June 1, 2015