# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| BRIDGET BITTMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 14 C 08191 |
| v. | ) |
| | ) Judge John J. Tharp, Jr. |
| MEGAN FOX, *et al*., | ) |
| | ) |
| Defendants. | ) |

## ORDER

For the reasons stated more fully below, Defendant Dan Kleinman's motion to dismiss for lack of personal jurisdiction [39] is granted without prejudice. The plaintiff's amended complaint, if any, is to be filed within 21 days of this order.

## STATEMENT

In the Amended Complaint, plaintiff Bridget Bittman, a marketing and public relations professional employed by the Orland Park Public Library, alleges that the defendants undertook "efforts to defame, discredit, disparage and damage Ms. Bittman's reputation and thereby cause her to suffer harm." Am. Compl., Dkt. # 34 ¶ 16. One of the defendants, Dan Kleinman, moves for dismissal based on lack of personal jurisdiction and for failure to state a plausible claim of defamation or false light against him. Because the Amended Complaint fails to allege adequately that Kleinman himself created any contacts with the state of Illinois other than the fact that his website may be accessed by Illinois residents, Bittman fails to establish a *prima facie* case that the Court has personal jurisdiction over Kleinman. Lacking personal jurisdiction over Kleinman, the Court cannot otherwise address the sufficiency of the claims against him.

### Facts

In deciding a motion to dismiss under Rule 12(b)(6) or Rule)2(b)(2), the Court takes as true all well-pleaded facts alleged in the complaint and resolves any factual disputes in the affidavits in favor of the plaintiff. *Mann v. Vogel*, 707 F.3d 872, 877 (7th Cir. 2012) (Rule 12(b)(6)); *Felland v. Chilon*, 682 F.3d 665, 672 (7th Cir. 2012) (Rule 12(b)(2)). The following facts are, therefore, accepted as true.

According to the complaint, the defendants do not live in Orland Park but are "community activists who oppose unfiltered access to the Internet at public libraries." Am. Compl., Dkt. # 34 ¶¶ 24-25. In the Fall of 2013, Bittman publicly responded to complaints from defendants (and Illinois residents) Megan Fox and Kevin Dujan about the Orland Park Public Library providing unfiltered access to the Internet. After that, Bittman says, they began to personally attack, harass, and threaten her. *Id*. ¶¶ 26-27, 31. As relevant here, on July 8, 2014,

Fox posted on YouTube video footage of Bittman during a confrontation with Dujan and another activist; the video was marked with a description and captions that Bittman says are untrue and defamatory. The video depicts Bittman exiting the Orland Park Civic Center and briskly walking directly toward the two individuals who were filming from some distance away, asking "Can I help you?" As she walks toward the individuals, the video's caption reads: "Bittman makes a beeline for us clenching something . . . mace? Pepper spray? Stink bomb?" Another caption appears while Bittman is talking; it reads "'Look at him, this fruit is blocking me.'" The video was posted with a description including the phrase "Video of Bridget Bittman committing Disorderly Conduct/Breach of Peace on 7/8/14." According to Bittman, she did not have any weapon in her hand and did not call anyone a "fruit" during the encounter, nor did she commit disorderly conduct or breach of peace.

On July 27, 2014, this video (the "July 8 video"), with the allegedly defamatory title and captions, was republished by Defendant Kleinman on his blog entitled "Safe Libraries," along with Kleinman's commentary. Am. Compl., Dkt. # 34 ¶¶ 93-96. Kleinman describes himself as "'library watchdog and journalist' who has criticized policies that allow library patrons "to access and view pornography." Mem., Dkt. # 40 at 1. According to the Amended Complaint, Kleinman is a "close associate" of Fox and Dujan and worked in concert with them.[1] Kleinman's July 27 post, *see* http://safelibraries.blogspot.com/2014/07/gay-hate-at-your-library.html, is entitled "Gay Hate @ Your Library." In it Kleinman writes that the video shows Bittman "attack[ing] a gay man." The Amended Complaint refers to this statement as the "Republication Statement." The complaint further alleges that on August 21, 2014,[2] Kleinman characterized Bittman as a "gay hater," and that he has also characterized her as a "homophobe." Am. Compl., Dkt. # 34 ¶¶ 127-130. Bittman says she is not homophobic and does not hate gay people.

Kleinman resides in the State of New Jersey and operates the Safe Libraries blog from his home. According to Kleinman, on the blog he publishes "articles of public interest about libraries located all over the country." He has never been to Illinois, nor does he own any property in the state or do business there.

**Discussion**

The Amended Complaint alleges, in relevant part, that Kleinman defamed Bittman and committed the tort of false light invasion of privacy. In Counts Five and Six, Bittman alleges that Kleinman committed defamation *per se* and placed her in a false light because the Republication Statement falsely imputes that she attacked a gay man and engaged in criminal activity. Counts Eight and Nine assert claims of defamation *per se* and false light, respectively, based upon Kleinman's "gay hater" and "homophobe" statements. Kleinman moves to dismiss the Amended Complaint for lack of personal jurisdiction and failure to state a claim.

---

[1] The Amended Complaint details much more allegedly harassing or defamatory conduct by Fox and Dujan alone, but those facts are not relevant to Kleinman's pending motion.

[2] Bittman does not identify the context of any August 21 statement. The Court notes, however, the same July 27 blog post incorporated into the Amended Complaint makes reference to Bittman's purported "gay hate" and "homophobic remarks."

Kleinman argues that he is not subject to general personal jurisdiction or specific personal jurisdiction in Illinois because he has no contact with the state. His supporting affidavit sets forth the facts—uncontested by the plaintiff—that he resides in New Jersey and has never visited, lived in, or worked in Illinois. Nor has Kleinman ever entered into a contract, owned property or done business in Illinois. Kleinman operates his blog from his home in New Jersey. He also contends that he has never directed any blog post toward Illinois readers and that he has never directed "any activities, let alone tortious activities" toward Bittman or Illinois. Bittman disputes these contentions but does not further augment the factual allegations of her complaint or supply any affidavit.

A federal court in Illinois may exercise personal jurisdiction over Kleinman if the Illinois long-arm statute would allow it. *See* Fed. R. Civ. P. 4(k)(1)(A); *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 425 (7th Cir. 2010). Because Illinois' statute contains a catch-all provision that permits personal jurisdiction if it would be authorized by either the Illinois Constitution or the United States Constitution, the state statutory and federal constitutional requirements merge. *Id.*; see 735 Ill. Comp. Stat. 5/2-209(c).

Personal jurisdiction may be "general" or "specific." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014); *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 318 (1945). General personal jurisdiction exists where the defendant's continuous operations within the forum state are "so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Daimler AG*, 134 S. Ct. at 754 (quoting *Int'l Shoe Co.*, 326 U.S. at 318). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2853 (2011). Bittman does not dispute that the courts of Illinois would lack general personal jurisdiction over Kleinman, so the Court may set aside Kleinman's arguments on that point.

Specific personal jurisdiction exists when the plaintiff's claims against the defendant arise out of the defendant's constitutionally sufficient contacts with the forum state. *uBID, Inc.*, 623 F.3d at 425; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). "The key question is therefore whether the defendant [has] sufficient 'minimum contacts' with Illinois such that the maintenance of the suit 'does not offend traditional notions of fair play and substantial justice.'" *Tamburo v. Dworkin*, 601 F.3d 693, 700-701 (7th Cir. 2010), citing *Int'l Shoe Co.,* 326 U.S. at 316. Specific jurisdiction requires that (1) the defendant has purposely directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in the state, and (2) the alleged injury arises out of the defendant's forum-related activities. *Id*. at 702, citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985).

In *Calder v. Jones*, 465 U.S. 783 (1984), the Supreme Court held that California could exercise personal jurisdiction in a libel action over the author and editor of an article published in the *National Inquirer* about the actress Shirley Jones, although the defendants were Florida residents, the article was written and edited there, and the tabloid was a Florida corporation. *See id*. at 785-86. The Supreme Court reasoned:

> The allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the "effects" of their Florida conduct in California.

*Calder,* 465 U.S. at 788-89. The Court further reasoned that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" where "they they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation." *Id*. at 789-90.

In *Tamburo*, the Seventh Circuit primarily drew upon *Calder* when charged "to apply long-established rules for asserting personal jurisdiction over foreign defendants to the relatively new setting of torts committed over the Internet." 601 F.3d at 697. There, the owners of websites providing free information about dog breeds were sued for defamation and various business torts after they published critical posts about and encouraged a boycott of the operator of a dog-breeding software company who had used information from those websites. The Seventh Circuit began its analysis by extracting from *Calder* three "requirements" to show "purposeful direction," namely: "(1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state." *Tamburo*, 601 F.3d at 703. As to the key inquiry—whether website operators had "expressly aimed" their conduct at the state of Illinois, the appellate court answered in the affirmative, reasoning that the individual defendants "published false and defamatory statements" about plaintiff, encouraged a boycott of his business, and published his address urging readers to contact and harass him, all "with the knowledge that Tamburo lived in Illinois and operated his business there." *Id*. at 706. "Thus, although they acted from points outside the forum state, these defendants specifically aimed their tortious conduct at Tamburo and his business in Illinois with the knowledge that he lived, worked, and would suffer the 'the brunt of the injury' there." *Id.*

Since *Calder*, and even since *Tamburo*, however, the Supreme Court has further clarified that the situs of the injury is relevant but not sufficient to establish minimum contacts. *Walden v. Fiore*, 134 S. Ct. 1115 (2014), emphasized that the relation between the foreign defendant and the forum state "must arise out of contacts that the 'defendant *himself*' creates with the forum State. 134 S. Ct. at 1122, citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (emphasis in original). Furthermore, the analysis "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Id.* Finally, the Court clearly stated that "the plaintiff cannot be the only link between the defendant and the forum"; rather, it "is the defendant's conduct that must form the necessary connection with the forum State." *Id*. All of these principles apply with equal force when intentional torts are alleged. *Id*. at 1123. The *Walden* Court stated that these principles had driven the result in *Calder* because in that case, the defendants had developed their story by contacting sources located in California and "wrote an article for publication in California," where they knew that their tabloid had its

4

largest circulation (of more than 600,000 copies) and would be most likely to damage Jones's reputation there. *Id*. at 1124. The reputational injury incurred as a result of the article being read by hundreds of thousands of readers in California "connected the defendants' conduct to *California,* not just to a plaintiff who lived there." *Id*. By contrast, the Court concluded, personal jurisdiction was lacking in *Walden* because the location of the plaintiff's injury was not a sufficient contact with the forum state of Nevada. *Id.* at 1125. There, the plaintiff alleged that the defendant police officer's intentionally tortious conduct in Georgia—wrongfully seizing and retaining the plaintiffs' cash and submitting a false probable cause affidavit in support of a forfeiture action—was not sufficient to support personal jurisdiction in Nevada, even if the defendant acted with the knowledge that his conduct would injure the plaintiffs in Nevada.

Building on *Walden*, the Seventh Circuit held in *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (7th Cir. 2014), that the district court erred in concluding that personal jurisdiction could be exercised in a trademark case over a defendant maker of projectile irritants that allegedly misled consumers into believing it was the only maker of PepperBall products. The Court held that there was no personal jurisdiction over the defendant, Real Action, in Indiana, despite the following contacts: "Real Action fulfilled several orders of the allegedly infringing projectiles for purchasers in Indiana; second, it knew that Advanced Tactical was an Indiana company and could foresee that the misleading emails and sales would harm Advanced Tactical in Indiana; third, it sent at least two misleading email blasts to a list that included Indiana residents; fourth, it had an interactive website available to residents of Indiana; and finally, it put customers on its email list when they made a purchase, thereby giving the company some economic advantage." *Id* at 801. The Seventh Circuit reasoned that the plaintiff has no evidence of any actual sales by Real Action in Indiana, and that, in any event, *de minimis* sales would not support personal jurisdiction. *Id*. Moreover, the foreseeability of the plaintiff's injury in Indiana, its home state, was not relevant to whether the defendant itself had created contacts with the forum state. *Id*. at 802. Finally, the defendant's online activities—"the sending of two allegedly misleading emails to a list of subscribers that included Indiana residents and the maintenance of an interactive website"—did not show that the defendant "targeted Indiana somehow." *Id*. at 803-803.

Here, Kleinman contends that he did not expressly aim any conduct at the State of Illinois because his blog is for a national readership and the post addressed a topic of interest involving "American libraries in general." Reply, Dkt. # 66 at 6. His statements about Bittman and the July 8 video, he argues, were not purposefully directed at Illinois readers because the mere availability of his post to Illinois readers does not mean it was addressed to them in particular. He further argues that the video's depiction of Illinois residents does not mean that the accompanying editorial content was directed to an Illinois readership.

In response, Bittman argues that that Kleinman was collaborating with Fox and Dujan, two "close associates" in Illinois, in publicizing their video and seeking to humiliate and defame her. *See* Mem., Dkt. # 61 at 3; *see also* Am. Compl., Dkt. # 34 ¶ 33 (defendants have engaged in "a concerted campaign"); ¶ 132 (defendants "collaborated and worked in concert"). She further argues that under *Calder* and *Tamburo*, she has sufficiently alleged that Kleinman purposefully directed the defamatory statements at Illinois because he was "fully aware that [Bittman] resides in Illinois and would feel injury in her personal and professional life in Illinois" and "with a

5

complete understanding that [the video and statements] concerned an Illinois public library and an Illinois citizen." Mem., Dkt. # 61 at 5, 6.

It is Bittman's burden to establish a prima facie case of personal jurisdiction, *see N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014), and the Court concludes that she has not met that burden. *Calder* is the most factually similar of the relevant authorities, but even the relatively attenuated connections between the individual defendants in that case and the State of California were more substantial than what Bittman alleges here. In *Calder*, the defendants had engaged in conduct in the forum state by contacting sources in California for their allegedly defamatory article, thus purposefully connecting themselves to the state in which the plaintiff's harm was suffered. The defendants also knew that the article would circulate widely—to hundreds of thousands of readers—in California, where the Enquirer was most heavily subscribed. In *Calder* there was, in short, a basis to conclude that the defendants had "expressly aimed" their alleged libel at the state of California.

Here, by contrast, Bittman does not allege any facts supporting an inference that Kleinman's activities were specifically aimed at Illinois or that he inserted himself into Illinois in any way in order to develop his post, which appears (so far as the present record reflects) to be based upon published reports and not original reporting. Nor does she allege facts to suggest that Bittman had any reason to believe that his blog post would be **read** widely (or even at all) in Illinois; there are no allegations that the blog has an Illinois readership, in marked contrast to *Calder*. The injury in a defamation and false-light case is complete only upon publication of the allegedly defamatory material. *See Walden*, 134 S. Ct. at 1124 ("However scandalous a newspaper article might be, it can lead to a loss of reputation only if communicated to (read and understood by) third persons.").Thus, although Kleinman could certainly anticipate that Bittman would be distressed by his statements, were she ever to read them, absent some allegations of a significant Illinois readership, Bittman supplies no reason to believe that Kleinman knew that Bittman would suffer reputational harm as a result of his post. In a defamation case, to say that the plaintiff "felt the effects" of the tort in the forum state is merely to say that she lives there. And as the Seventh Circuit emphasized in *Advanced Tactical*, the *plaintiff's* connection to the forum state cannot be the hook providing personal jurisdiction over the defendant. *See* 751 F.3d at 801. Rather, the defendant's suit-related conduct must supply the connection. *Id*. Here, Bittman focuses on her own connections to Illinois rather than Kleinman's.

Bittman's reliance on *Tamburo* is also inapt. In that case, the defendants' activities included encouraging a boycott of the plaintiff's business that they knew to be in Illinois; the allegedly tortious activity, therefore was intended to and would foreseeably bring about an injury in the forum state. *See* 601 F.3d at 706 ("[T]he individual defendants' use of their public websites to defame an Illinois-based businessman and exhort readers to boycott his products can likewise be conceptualized as an electronic 'entry' into Illinois for jurisdictional purposes."). The defendants also sent emails encouraging a boycott of the plaintiff's products and supplying his address while encouraging readers to harass him. *Id*. These acts were the "something more" than a forum-state injury that is needed to establish the defendant's "expressly aimed" conduct; the defendants were expressly attempting to incite action by residents of the forum state, against the plaintiff in the forum state. Here, in attempting to establish that Kleinman purposely directed conduct at Illinois, all she can point to is that she, the subject of part of the post, is an Illinois resident working at an Illinois library. In short, the plaintiff is the defendant's only connection to

the forum state. Nothing in *Tamburo* suggests that this could be a sufficient contact to justify the exercise of specific personal jurisdiction.

Bittman's allegations of concerted activity between Kleinman in New Jersey and Fox and Dujan in Illinois do not suffice to connect Kleinman to Illinois. First, she does not supply a single factual allegation of any contact or communications between Kleinman and those defendants such that the alleged collaboration or concerted activity appears plausible. Her allegations of concerted action are wholly conclusory and therefore not entitled to any presumption of truth. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (requiring the plaintiff to allege "plausible grounds to infer an agreement"); *Redd v. Nolan*, 663 F.3d 287, 292 (7th Cir. 2011). Thus there is no basis to say here, in contrast to *Calder*, that Kleinman reached into the state to obtain information for his post, or that he otherwise participated in activity directed at Illinois. Whatever the connection between Kleinman and the Illinois defendants, the complaint leaves it a mystery.

Moreover, to the extent Bittman is attempting to base personal jurisdiction on a theory of joint activity, she wholly fails to address the question whether Illinois endorses the conspiracy theory of personal jurisdiction. As the Seventh Circuit has noted, "the theory may not be valid in Illinois." *Smith v. Jefferson Cnty Bd. of Educ.*, 378 F. App'x 582, 585 (7th Cir. 2010). Recent decisions of the Illinois Appellate Court certainly suggest as much, *see Knaus v. Guidry*, 389 Ill. App. 3d 804, 825, 906 N.E.2d 644, 661 (2009); *Ploense v. Electrolux Home Products, Inc.*, 377 Ill. App. 3d 1091, 1107, 882 N.E.2d 653, 667 (2007); *see also Green v. Advance Ross Electronics Corp.*, 86 Ill. 2d 431, 440-41, 427 N.E.2d 1203, 1208 (1981). Some dispute remains, however. See *Cleary v. Philip Morris, Inc.*, 312 Ill. App. 3d 406, 410, 726 N.E.2d 770, 774 (2000) ("We therefore hold that in circumstance where the defendant has actively supported a conspiracy where one of its members operated in Illinois, there may exist the 'minimum contacts' necessary to fairly assert jurisdiction."). This Court need not sort out an answer, as Bittman has failed even to invoke the conspiracy theory of jurisdiction in her arguments although it is her burden to establish personal jurisdiction. Furthermore, as noted, Bittman has not supplied a single detail of the alleged "concerted activity," let alone alleged an actual conspiracy, with any particularity. Therefore, even if the conspiracy theory of personal jurisdiction were valid, it would not apply here because the "conspiracy" is only hinted at.

In the end, Bittman's case for personal jurisdiction over Kleinman boils down to the undisputed allegations that he republished and commented upon information concerning an Illinois resident employed by an Illinois library on a subject-specific "watchdog" website that is accessible by anyone, anywhere. On these facts, it would indeed offend traditional notions of fair play and substantial justice to hale into an Illinois court an online journalist who has no connection to the state merely because the subject of his article resides there. The writing and posting of the accompanying article, without more, do not suggest that Kleinman was purposefully directing or expressly aiming any conduct at Illinois; operating even an "interactive" website "should not open a defendant up to personal jurisdiction in every spot on the planet where that interactive website is accessible." *Advanced Tactical Ordnance Systems*, 751 F.3d at 803. There is simply no reason to believe that Illinois residents were Kleinman's targeted, or even expected, audience, and therefore he cannot be said to have directed his allegedly tortious conduct to the state merely because his subjects were based in Illinois.

For these reasons, the motion to dismiss for lack of personal jurisdiction is granted. Because the Court has concluded that it lacks jurisdiction over Kleinman, there is no basis to consider his challenges to the sufficiency of the allegations against him to state a claim. The Court grants the plaintiff leave to file a further amended complaint, within 21 days of the entry of this Order, if she believes in good faith that she can cure the deficiencies in her jurisdictional allegations as to Kleinman.

Date: September 23, 2015

John J. Tharp, Jr.
United States District Judge