## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| BRIDGET BITTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 1:14-cv-8191 |
| | ) | |
| | ) | Judge John J. Tharp |
| MEGAN FOX, an individual; KEVIN | ) | |
| DUJAN, an individual; DAN KLEINMAN, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS FOX AND DUJAN'S AMENDED ANSWER,
### AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS
### TO PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants Megan Fox and Kevin DuJan ("Fox and DuJan") set forth their answer to

Plaintiff's Second Amended Complaint and set forth their affirmative defenses and

counterclaims thereto as follows:

### NATURE OF ACTION

1.      This is an action for violation of the Computer Fraud and Abuse Act, 18 U.S.C.
§1030 ("CFAA"), Stored Communications Act, 18 U.S.C. § 2701, et seq. ("SCA"), the
Electronic Communications Privacy Act, 18 U.S.C. § 2510 ("ECPA"); violation of the United
States Copyright Act of 1976, 17 U.S.C. § 101, et seq. ("Copyright Act"); defamation per se;
false light; intentional infliction of emotional distress; and assault, all arising from conduct
engaged in by the Defendants to harm Ms. Bittman.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to bring this action for the listed claims,

but deny that Plaintiff can state any claims or that Plaintiff is entitled to any relief.  Fox and

DuJan also state that Plaintiff's claims for violation of the Computer Fraud and Abuse Act, 18

U.S.C. §1030 (Count 1); violation of the Stored Communications Act, 18 U.S.C. § 2701, et seq.

(Count 2); assault (Count 7); defamation per se (Count 10); false light (Count 11); intentional

infliction of emotional distress (Count 12); and injunctive relief (Count 13) were dismissed by the Court on June 1, 2015.

2.    By this action, Ms. Bittman seeks statutory damages, compensatory damages, punitive damages, attorney's fees and costs, injunctive relief, and all other relief to which the she may be entitled and as deemed appropriate by this Court.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to seek statutory, compensatory, and punitive damages, attorney's fees and costs, injunctive relief, and other relief, but deny that Plaintiff can state any claims or that Plaintiff is entitled to any of the requested relief.

## PARTIES

3.    BRIDGET BITTMAN is a citizen of the State of Illinois and a resident of Cook County, Illinois.

**ANSWER:** Agreed.

4.    MEGAN FOX is a citizen of the State of Illinois and a resident of Will County, Illinois.

**ANSWER:** Agreed.

5.    KEVIN DUJAN is a citizen of the State of Illinois and a resident of Cook County, Illinois.

**ANSWER:** Agreed.

6.    DAN KLEINMAN is, upon information and belief, a citizen of the State of New Jersey.

**ANSWER:** Upon information and belief, Fox and DuJan agree that Kleinman is a citizen of New Jersey.

7.    ADAM ANDRZEJEWSKI is a citizen of the State of Illinois and a resident of DuPage County, Illinois.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7.

8.     FOR THE GOOD OF ILLINOIS is an Illinois Not for Profit Organization.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over the subject matter of the Plaintiff's federal statutory claims pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the subject matter of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to bring claims under federal statutes and state law, but denies that Plaintiff can state any claims.  Whether the Court has subject matter jurisdiction over Plaintiff's claims is a legal conclusion to which no response is required.  To the extent a response is deemed required, Fox and DuJan do not contest subject matter jurisdiction over this action.

10.     This Court may exercise personal jurisdiction over Defendants Megan Fox ("Fox"), DuJan ("DuJan"), and Andrzejewski ("Andrzejewski") because they are citizens and residents of Illinois.

**ANSWER:** Whether the Court can exercise personal jurisdiction over Fox and DuJan is a legal conclusion to which no response is required.  To the extent a response is deemed required, for the purposes of this case, Fox and DuJan do not contest personal jurisdiction in this Court.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 10.

11.     This Court may exercise personal jurisdiction over Defendant For The Good of Illinois because it is a business incorporated in Illinois.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 11.

12. This Court may exercise personal jurisdiction over Defendant Dan Kleinman ("Kleinman") because he has sufficient contacts with Illinois for this Court to exercise general personal jurisdiction over him and/or has directed conduct toward Ms. Bittman in this jurisdiction sufficient for this Court to exercise specific personal jurisdiction over him.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12.

13. In particular, Kleinman has availed himself of Illinois laws by filing numerous Freedom of Information Act ("FOIA") requests related to Bittman's position at the Orland Park Public Library, pursuant to the Illinois Freedom of Information Act, 5 ILCS 140/1, *et seq*.

**ANSWER:** Fox and DuJan are aware Kleinman has sent at least one FOIA request to the Orland Park Public Library. Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 13.

14. Further, Kleinman directed his conduct toward Ms. Bittman in this jurisdiction by appearing via video-teleconference at Orland Park Public Library Board meetings.

**ANSWER:** Fox and DuJan deny that Kleinman was permitted to appear and participate via video-conference at Orland Park Public Library Board meetings.

15. Additionally, Kleinman has further availed himself of Illinois laws by filing a complaint with the Illinois Attorney General in relation to Orland Park Public Library meetings and alleged violations of the Illinois Open Meetings Act, 5 ILCS 120/1, *et seq*.

**ANSWER:** Fox and DuJan are aware Kleinman has filed at least one complaint regarding the Orland Park Public Library's violations of the Illinois Open Meetings Act. Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 15.

16.     In a further effort to harm Ms. Bittman in this jurisdiction, Kleinman posted comments relating to his wrongful conduct in response to several Chicago Tribune articles about the Orland Park Public Library on the Chicago Tribune website (per example, http://www.chicagotribune.com/suburbs/dailysouthtown/news/ctstaorlandlibrarysettlest032020150319story). In addition, he posted comments to articles found on a website known as Illinois Leaks: Edgar County Watchdogs ("Edgar County Watchdogs") that reports on activities in Cook County and the surrounding Illinois counties (per example, http://edgarcountywatchdogs.com/2014/07/orland-park-library-officials-call-people-fruit-f aggot-gay/).

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 16.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district. Further, the Defendants directed their conduct toward the Plaintiff in this district.

**ANSWER:** Whether venue is proper in this district is a legal conclusion to which no response is required. To the extent a response is deemed required, for purposes of this case, Fox and DuJan do not contest venue in this district. Fox and DuJan deny the remaining allegations in Paragraph 17.

18.     The Defendants have engaged in intentional conduct with actual malice that has harmed Ms. Bittman.

**ANSWER:** Denied.

19.     Ms. Bittman has been injured by the Defendants' conduct and has suffered damages resulting therefrom.

**ANSWER:** Denied.

## FACTUAL BACKGROUND

20.     This action involves the Defendants' efforts to defame, discredit, disparage and damage Ms. Bittman's reputation and thereby cause her to suffer harm.

**ANSWER:** Denied.

**Background on Parties**

21.     Ms. Bittman is an employee of the Orland Park Public Library.

**ANSWER:**  Upon information and belief, Fox and DuJan deny Plaintiff is a current employee of the Orland Park Public Library.

22.     For seven years, Ms. Bittman has worked full-time providing marketing and public relations for libraries.

**ANSWER:**  Fox and DuJan agree that Plaintiff previously worked for the Orland Park Public Library (the "Library") in a public relations role, and that she held this role since at least the Fall of 2013.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22.

23.     She has served on various committees for the "Big Read" program while working for her local library.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 23.

24.     She has spoken on library marketing best practices on several occasions.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 24.

25.     The Plaintiff is a well-respected member of the community.

**ANSWER:**  Denied.

26.     She has volunteered with local community theater, her church, and other organizations.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 26.

27.     Ms. Bittman has also operated a small, part-time business to supplement her income and pursue interests in floral design.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 27.

28.     The Defendants are community activists who oppose unfiltered access to the Internet at public libraries.

**ANSWER:**  Fox and DuJan state that they are writers and community activists who have openly criticized the policies and practices of the Library that have allowed patrons to view child pornography on the Library's public computers and resulted in repeated indecent exposures in the Library's public computer room.  Fox and DuJan deny the remaining allegations in Paragraph 28.

29.     Upon information and belief, none of the Defendants reside in Orland Park.

**ANSWER:**  Fox and DuJan state that Megan Fox is a resident of Mokena, IL, and Kevin DuJan is a resident of Chicago, IL.  Fox and DuJan agree that, upon information and belief, Kleinman resides in New Jersey.  Fox and DuJan state that Andrzejewski and For The Good Of Illinois are no longer Defendants in this case.

## Controversy Begins

30.     In the Fall of 2013, Megan Fox ("Fox") and Kevin DuJan ("DuJan") complained that the Orland Park Public Library provided unfiltered access to the Internet.

**ANSWER:**  Fox and DuJan state that in the Fall of 2013, Fox and DuJan voiced complaints to the Library about the Library's public Internet usage policies and related sexual misconduct by library patrons.  Fox and DuJan deny the remaining allegations in Paragraph 30.

31.     In her position with the Orland Park Public Library, Ms. Bittman publicly responded to the complaints.

**ANSWER:**  Fox and DuJan agree that due to Plaintiff's role as a Library employee, Plaintiff has engaged with Fox and DuJan over the Library Internet usage issues.

7

32.     Since the Fall of 2013, Defendants Fox and DuJan have engaged in a campaign to change library policy at the Orland Park Public Library.

**ANSWER:**  Agreed.

33.     This litigation is not about the efforts of Defendants Fox and DuJan to change policy at the Orland Park Public Library.

**ANSWER:**  Denied.

34.     This litigation is not about the efforts of Defendants Fox and DuJan to criticize Ms. Bittman in her position with the library.

**ANSWER:**  Denied.

35.     Rather, this litigation addresses the Defendants' efforts to personally attack and harm Ms. Bittman, to damage her reputation, and to harass and threaten her.

**ANSWER:**  Denied.

### Defendants' Wrongful Conduct

36.     Over the last several months, the Defendants have engaged in repeated, relentless efforts to harm Ms. Bittman.

**ANSWER:**  Denied.

37.     The Defendants have engaged in a concerted campaign to destroy Ms. Bittman's reputation and career by posting numerous defamatory statements against her.

**ANSWER:**  Denied.

38.     The defamatory statements and efforts by which the Defendants engaged have harmed Ms. Bittman.

**ANSWER:**  Denied.

*Early Statements*

39.     As early as November 4, 2013, the Defendants began making and causing to be made numerous false and defamatory statements about the Plaintiff on various social media websites, including the Facebook Page "Fans of Megan Fox" ("Fox Facebook Page").

**ANSWER:**  Denied.

8

40.    On May 18, 2014, Defendant Fox posted a status on the Fox Facebook Page that accused the Plaintiff of filing false police reports ("Police Report Statement").

**ANSWER:** Denied.

41.    Specifically, Defendant Fox stated:

> I wonder at what point in their presentation at the Hatefest that Mary Weimar and Bridget Bittman taught the other public employees in attendance about using the police as a weapon against their perceived enemies in the "opposition." Do you know that the Orland Park Public Library Board contacted the police SIX TIMES in total to make false police complaints against me (and a few times against Kevin too) . . .

> The Police laughed at all of these people, but sadly the police never charged any of them with disorderly conduct for making false police reports.  They should have been charged.

**ANSWER:**  Fox and DuJan deny that Fox made this statement.  Fox and DuJan agree that on May 18, 2014, the above language was posted on the "Fans of Megan Fox" Facebook Page, but deny that the quoted language fully and accurately states the post's contents.  Fox and DuJan refer to that post for its contents and deny any characterization thereof.

42.    The Plaintiff does not file false police reports.

**ANSWER:**  Denied.

*Google Photo Statement*

43.    On June 12, 2014, Defendant Fox posted a photograph of the Plaintiff holding a champagne bottle on the Fox Facebook Page she apparently obtained through Google searches ("Google Photo").

**ANSWER:**  Fox and DuJan deny that Fox posted this photograph.  Fox and DuJan agree that on June 12, 2014, a photograph of Plaintiff holding a champagne bottle was posted on the "Fans of Megan Fox" Facebook Page.  Fox and DuJan agree that this photograph was obtained through Google searches.

9

44.     In a comment to the post with Google Photo, Defendant Fox stated:

[Bridget Bittman] would have to be drunk to claim the ridiculous things she does about the library in the media

"Sober up Bridget [t]he truth will set you free!"

("Google Photo Statement")

**ANSWER:**  Fox and DuJan deny that Fox made this statement.  Fox and DuJan agree that a comment was posted that contains the quoted language, which stated in full: "She would have to be drunk to claim the ridiculous things she does about the library in the media…like no sex crimes have ever occurred there.  Uh…wait, isn't public masturbation a sex crime?  Isn't accessing child pornography a SEX CRIME!?? why, YES…it is!!!  Sober up Bridget! The truth will set you free!"

45.     Defendant Fox sought to portray Ms. Bittman as drinking alcohol while working for the Orland Park Public Library.

**ANSWER:**  Denied.

46.     Ms. Bittman does not drink alcohol while working for the Orland Park Public Library.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 46.

*Harassment Through Home Photos*

47.     Apparently, the Defendants were not satisfied with merely making false statements about Ms. Bittman's work performance.

**ANSWER:**  Denied.

* * *

The allegations asserted in Paragraphs 48–56 relate solely to Plaintiff's claim for Intentional Infliction of Emotional Distress (Count 12), which has been dismissed.  Therefore, Fox and DuJan are not required to answer those allegations.  To the extent an answer is deemed

required, Fox and DuJan deny that they knowingly posted photographs of Plaintiff's house or that they knowingly traveled to or photographed Plaintiff's house. Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraphs 48–51. Fox and DuJan deny the allegations in Paragraph 52–56.

\* \* \*

*July 8 Video*

57.    On July 8, 2014, Fox published a video on YouTube accessible on the webpage at the uniform resource locator ("url") https://www.youtube.com/watch?v=idu0lur4OCc ("July 8 Video").

**ANSWER:**  Fox and DuJan deny that Fox posted the video. Fox and DuJan agree that a video was posted on the YouTube page at the above url on July 8, 2014.

58.    In posting the July 8 Video, Fox published a title for the video that reads "Bridget Bittman commits Disorderly Conduct/Breach of Peace on 7/8/14 according to Officer Schmidt."

**ANSWER:**  Fox and DuJan deny that Fox posted the video or title. Fox and DuJan state that the title of the video is "2014-07-08 = Bridget Bittman commits Disorderly Conduct/Breach of Peace according to Officer Schmidt."

59.    The July 8 Video contains no comments from anyone named Officer Schmidt.

**ANSWER:**  Fox and DuJan state that the video's captions explain statements Officer Jody Schmidt of the Orland Park Police Department made to Fox and DuJan, including that "according to Officer Schmidt" Plaintiff "committed Disorderly Conduct/Breach of Peace on 7/8/14 outside the Orland Park Civic Center." Fox and DuJan agree that the July 8 Video[1] does not include an interview with Officer Schmidt.

---

[1]    Throughout the Second Amended Complaint, Plaintiff refers to certain posts or statements by defined terms. By adopting Plaintiff's naming conventions in this document for ease of reference, Fox and DuJan do not admit that Plaintiff's characterizations are accurate.

60.     The July 8 Video contains a caption that reads "Outside the Orland Park Civic Center 7/8/14 at 1:15 pm Bridget Bittman commits disorderly conduct/breach of peace 8 6 1 1."

**ANSWER:**  Agreed.

61.     The Defendants included this caption in the July 8 Video.

**ANSWER:**  Fox and DuJan deny that Fox posted the caption.  Fox and DuJan agree that DuJan included this caption in the July 8 Video.

62.     In the July 8 Video, Ms. Bittman does not commit disorderly conduct.

**ANSWER:**  Denied.

63.     In the July 8 Video, Ms. Bittman does not commit breach of peace.

**ANSWER:**  Denied.

64.     The title to the video and the caption state that Ms. Bittman engaged in criminal conduct.

**ANSWER:**  Denied.

65.     Ms. Bittman did not engage in any criminal conduct.

**ANSWER:**  Denied.

66.     Although Defendant DuJan filed a complaint against Ms. Bittman, the Orland Park Police Department concluded the complaint to be groundless.

**ANSWER:**  Fox and DuJan agree that they filed a complaint against Plaintiff with the Orland Park Police Department.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 66.

67.     Officer Jody J. Schmidt of the Orland Park Police Department never cited Ms. Bittman for any criminal conduct or any conduct at all.

**ANSWER:**  Denied.

68.     Ms. Bittman was not cited with any crime for any conduct contained in the July 8 Video.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 68.

69.     The title and caption stating that Ms. Bittman committed disorderly conduct and breach of peace are false.

**ANSWER:** Denied.

70.     The July 8 Video contains a caption that reads "Bittman makes a beeline for us clenching something…mace? Pepper spray? Stink bomb?"

**ANSWER:** Agreed.

71.     The July 8 Video suggests Ms. Bittman carried a weapon.

**ANSWER:** Agreed.

72.     Ms. Bittman did not carry a weapon.

**ANSWER:** Fox and DuJan state that Bittman appeared to be carrying an object that could have been used as a weapon.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the remaining allegations in Paragraph 72.

73.     The July 8 Video contains a caption that reads "Look at him, this fruit is blocking me."

**ANSWER:** Agreed.

74.     The Defendants infer that Ms. Bittman used an anti-gay hateful term.

**ANSWER:** Fox and DuJan agree that Plaintiff used a gay slur.

75.     Ms. Bittman did not use an anti-gay hateful term.

**ANSWER:** Denied.

76.     Ms. Bittman did not call anyone a "fruit."

**ANSWER:** Denied.

77.     On the webpage containing the July 8 Video, Fox originally published a caption that read:

> BREAKING! Video of Bridget Bittman committing Disorderly Conduct/Breach of Peace on 7/8/14.  The police have issued her a citation under Ordinance 2989 8-6-1-1.  Remember that Bridget Bittman is not only the spokesman for the Orland Park Public Library (which makes her a public employee) . . . And this is how she behaves herself in public.  Trying to start a fight, brandishing

some kind of weapon in her hand (mace? pepper spray?), using anti-gay slurs . . . Should a public employee like Bridget Bittman be allowed to keep her $100,000/year job after behaving this way in public and committing disorderly conduct?

("Original July 8 Caption").

**ANSWER:**  Fox and DuJan deny that Fox posted this caption.  Fox and DuJan agree that a caption was posted that included the above language, but deny that the quoted language fully and accurately states the caption's contents.  Fox and DuJan refer to that caption for its contents and deny any characterization thereof.

78.    Later, Fox amended her post to read:

Bridget Bittman (a public employee of the Orland Park Library) committed Disorderly Conduct/Breach of Peace on 7/8/14 outside the Orland Civic Center according to Officer Schmidt. This is shameful behavior from a public employee. It was highly unprofessional. Watch the video: Bittman attempts to start a fight, has something in her hands as she's walking purposefully towards us, uses an anti-gay hateful term, and is then followed in this disgusting behavior by Diane Jennings (who rants and raves and shouts expletives at the camera). These are representatives of the Orland Park Public Library behaving this way. With one of them (Bittman) earning over $100,000/year and behaving this way in public. On 7/8/14 Bittman was cited for Disorderly Conduct/Breach of Peace by the Orland Park Police under Ordinance 2989 8-6-1-1 after Officer Schmidt viewed this footage.

("July 8 Caption").

**ANSWER:**  Fox and DuJan deny that Fox posted this caption.  Fox and DuJan agree that text was posted that included the above sentences.  Fox and DuJan refer to that caption for its contents and deny any characterization thereof.

79.     The Original July 8 Caption and the July 8 Caption again state that Ms. Bittman "committed Disorderly Conduct/Breach of Peace."

**ANSWER:**  Fox and DuJan agree the July 8 Captions include the words "Bridget Bittman committing Disorderly Conduct/Breach of Peace" and/or "Bridget Bittman (a public employee of the Orland Park Library) committed Disorderly Conduct/Breach of Peace."

80.     Ms. Bittman did not commit Disorderly Conduct/Breach of Peace.

**ANSWER:** Denied.

81.     The July 8 Caption states Ms. Bittman engaged in "shameful behavior" and "was highly unprofessional."

**ANSWER:**  Fox and DuJan agree that the July 8 Caption includes the following sentences: "Bridget Bittman (a public employee of the Orland Park Library) committed Disorderly Conduct/Breach of Peace on 7/8/14 outside the Orland Civic Center according to Officer Schmidt.  This is shameful behavior from a public employee.  It was highly unprofessional."

82.     Ms. Bittman did not engage in shameful or highly unprofessional behavior.

**ANSWER:** Denied.

83.     Ms. Bittman was not unprofessional.

**ANSWER:** Denied.

84.     The Original July 8 Caption and the July 8 Caption state Ms. Bittman attempts to start a fight.

**ANSWER:**  Fox and DuJan agree that the Original July 8 Caption includes the following words: "And this is how she behaves herself in public.  Trying to start a fight…"  Fox and DuJan further agree that the July 8 Caption includes the following words: "Watch the video: Bittman attempts to start a fight."

85.     Ms. Bittman did not attempt to start a fight.

**ANSWER:** Denied.

15

86.   In fact, the Orland Park Police Department concluded DuJan blocked Ms. Bittman's path on the sidewalk.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 86.

87.   The Original July 8 Caption and the July 8 Caption state that Ms. Bittman used an "anti-gay" term.

**ANSWER:**  Fox and DuJan agree that the Original July 8 Caption and the July 8 Caption state Plaintiff used an "anti-gay" term or slur.

88.   Ms. Bittman did not use an anti-gay hateful term.

**ANSWER:**  Denied.

89.   The July 8 Caption states "Bittman was cited for Disorderly Conduct/Breach of Peace by Orland Park Police under Ordinance 2989 8-6-1-1 after Officer Schmidt viewed this footage."

**ANSWER:**  Agreed.

90.   Ms. Bittman again was not cited for Disorderly Conduct/Breach of Peace.

**ANSWER:**  Denied.

91.   Neither Officer Schmidt nor anyone at the Orland Park Police Department cited Ms. Bittman for anything in the July 8 Video.

**ANSWER:**  Denied.

92.   The foregoing false statements contained in the July 8 Video are defamatory.

**ANSWER:**  Denied.

93.   Since its publication, more than 1400 individuals have viewed the July 8 Video.

**ANSWER:**  Fox and DuJan agree that, according to YouTube, the July 8 Video has been viewed more than 1400 times.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the number of "individuals" who have viewed the July 8 Video.

*Republication of July 8 Video*

94.     Since Fox posted the July 8 Video, Defendants Fox and DuJan informed Adam Andrzejewski of For the Good of Illinois about the July 8 Video.

**ANSWER:**  Fox and DuJan agree that after the July 8 Video was posted, DuJan informed Andrzejewski about the video.  Fox and DuJan deny the remaining allegations in Paragraph 94.

95.     Since then, Defendant Andrzejewski sent an electronic statement to 60,000 of his followers that mentioned Ms. Bittman and included a link to the July 8 Video.

**ANSWER:**  Fox and DuJan agree that they received an email blast from Andrzejewski that mentioned Plaintiff and linked to the July 8 Video.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 95.

96.     Since Defendant Andrzejewski sent his electronic statement, the Illinois Family Institute posted a link to the July 8 Video on its website at the url http://illinoisfamily.org/pornography/is-your-library-xxx-like-orland-park/.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 96.

97.     Defendant Kleinman republished the July 8 Video on his Safe Libraries blog at the url http://safelibraries.blogspot.com/search?updated-max=2014-08-06T06:14:00-04:00&max-results=1.

**ANSWER:**  Fox agrees that Kleinman posted the July 8 Video or a link to the July 8 Video on the Safe Libraries blog.  DuJan is without sufficient information to form a belief as to the truth of the allegations in Paragraph 97.

98.     On his Safe Libraries blog, Defendant Kleinman states that Ms. Bittman attacked a "gay man" ("Republication Statement").

**ANSWER:**  Fox and DuJan are without sufficient information to form a belief as to the truth of the allegations in Paragraph 98.

99.    Ms. Bittman did not attack a gay man.

**ANSWER:** Denied.

100.    Defendant Kleinman further republished the July 8 Video by providing a link to the July 8 Video in comments he made in response to articles found on the website known as Illinois Leaks: Edgar County Watchdogs ("Edgar County Watchdogs").

**ANSWER:** Fox and DuJan are without sufficient information to form a belief as to the truth of the allegations in Paragraph 100.

101.    Edgar County Watchdogs is a website on which articles appear relating to numerous counties in the State of Illinois.

**ANSWER:** Agreed.

102.    Edgar County Watchdogs posts numerous articles regarding the Defendants' interactions with the Orland Park Public Library.

**ANSWER:** Agreed.

103.    Along with the link to the July 8 Video he posted on the Edgar County Watchdogs website, Defendant Kleinman again falsely stated that Ms. Bittman "attacked a gay man."

**ANSWER:** Fox and DuJan are without sufficient information to form a belief as to the truth of the allegations in Paragraph 103.

104.    Defendant Kleinman further republished the July 8 Video by providing a link to the July 8 Video in comments he made to an article concerning the Orland Park Public Library on the website for the Chicago Tribune.

**ANSWER:** Fox and DuJan are without sufficient information to form a belief as to the truth of the allegations in Paragraph 104.

105.    Defendant Kleinman further republished the July 8 Video by providing a link to the July 8 Video in multiple tweets published through the social media platform Twitter using his handle @safelibraries.

**ANSWER:** Fox and DuJan are without sufficient information to form a belief as to the truth of the allegations in Paragraph 105.

106.    Despite knowing the false nature of the statements in the July 8 Video and its webpage on YouTube, Defendant Fox has not removed the statements.

**ANSWER:**  Fox and DuJan agree that the July 8 Video, as of this filing, is still available on

YouTube.  Fox and DuJan deny the remaining allegations in Paragraph 106.

107.    The Defendants have intentionally republished the July 8 Video and the defamatory statements contained therein and on YouTube.

**ANSWER:**  Denied.

*Unauthorized Facebook Page*

108.    Again, rather than limit their attacks to her employment with the Orland Park Public Library, the Defendants continued their attacks on her personal life.

**ANSWER:**  Denied.

109.    Ms. Bittman operates a floral design business.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 109.

110.    On or about July 10, 2014, Defendants Fox and DuJan created a webpage on the website owned by Facebook, Inc. ("Facebook") at the url http://www.facebook.com/sassyplantsillinois ("Facebook Page").

**ANSWER:**  Fox and DuJan agree that on or about July 10, 2014, DuJan created a Facebook

Page located at the url http://www.facebook.com/sassyplantsillinois.  Fox and DuJan deny the

remaining allegations in Paragraph 110.

111.    In creating the Facebook Page, Defendants Fox and DuJan used Ms. Bittman's personal information.

**ANSWER:**  Denied.

112.    In creating the Facebook Page, Defendants Fox and DuJan made it appear that Ms. Bittman created, maintained, and operated the Facebook Page.

**ANSWER:**  Denied.

113. In creating the Facebook Page, Defendants Fox and DuJan made it appear that Ms. Bittman created, maintained, and operated the Facebook Page for her floral design business.

**ANSWER:** Denied.

114. In creating and maintaining the Facebook Page, Defendants Fox and DuJan used, and continue to use, numerous copyrighted photographs of Ms. Bittman.

**ANSWER:** Fox and DuJan deny Fox posted any photographs of Ms. Bittman on the Sassy Plants Facebook Page. Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 114.

115. Ms. Bittman originally published many of these photographs on her Facebook page.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 115.

116. One such photograph depicts Ms. Bittman in a green dress ("Green Dress Photograph").

**ANSWER:** Fox and DuJan agree a photograph posted on the Sassy Plants Facebook Page appears to show Ms. Bittman wearing a green dress. Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of any remaining allegations in Paragraph 116.

117. The copyright for the Green Dress Photograph is registered with the United States Copyright Office and has the Registration Number VA0001938156, 2015-01-15.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 117.

118. Defendants Fox and DuJan displayed the Green Dress Photograph on the Facebook Page, without authorization or permission.

**ANSWER:** Fox and DuJan agree a photograph posted by DuJan on the Sassy Plants Facebook Page appears to show Ms. Bittman wearing a green dress. Fox and DuJan deny the remaining allegations in Paragraph 118.

119.    Defendants Fox and DuJan republished the Green Dress Photograph on the Facebook Page, without authorization or permission.

**ANSWER:**  Fox and DuJan agree a photograph posted by DuJan on the Sassy Plants Facebook Page appears to show Ms. Bittman wearing a green dress.  Fox and DuJan deny the remaining allegations in Paragraph 119.

120.    Defendants Fox and DuJan have continued to use significant portions of the Green Dress Photograph on the Facebook Page within the last three months.

**ANSWER:**  Fox and DuJan agree that posts by DuJan on the Sassy Plants Facebook Page in December 2014 appear to show Ms. Bittman wearing a green dress.  Fox and DuJan deny the remaining allegations in Paragraph 120.

121.    In addition, Defendants Fox and DuJan used copyrighted photographs of Ms. Bittman and her floral arrangements to post what appears to be an advertisement for Ms. Bittman's floral design services on the Facebook Page.

**ANSWER:**  Denied.

122.    One of these photographs depicts Ms. Bittman at a table with her actual floral designs and plants, as well as additional cartoon plants.

**ANSWER:**  DuJan agrees that a photograph on the Sassy Plants Facebook Page appears to show Ms. Bittman at a table with flowers and cartoon plants.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 122.

123.    The same photograph also contains the statement that "sassiness is guaranteed."

**ANSWER:**  DuJan agrees that a photograph on the Sassy Plants Facebook Page appears to show Ms. Bittman at a table with flowers and cartoon plants, and includes the words "sassiness is guarante[e]d."  Fox is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 123.

124.    In addition, text accompanying the photograph on the Facebook Page contains a caption offering a "Sassy Plants Booth" at the customer's "next big event," including "birthday part[ies], wedding[s], graduation[s], funeral[s], or whatever."

**ANSWER:**  DuJan agrees that the text accompanying a photograph on the Sassy Plants Facebook Page includes the following sentences: "Are you still putting on boring events like it's 2013 or something?  Stop it!  At your next birthday party, wedding, graduation, funeral, or whatever, why not have a Sassy Plants Booth set up?  You can teach people about plants, show them your sass, and tell them how to make their yards look sassier by just arranging flowers real good.  Give it a shot and make your events more sassy!"  DuJan denies that the quoted language in Paragraph 124 fully and accurately states the caption's contents.  Fox is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 124.

125.    An additional photograph used by Defendants Fox and DuJan on the Facebook Page, containing Ms. Bittman's original flower arrangements, accompanies text that reads, "Do you have what it takes to arrange flowers this good? Probably not.  You probably shouldn't even try because if you fail people will laugh at you.  Sorry but it's true."

**ANSWER:**  Fox and DuJan deny Fox posted any photographs on the Sassy Plants Facebook Page.  Fox is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 125.  DuJan agrees that a photograph of flowers appears on the Sassy Plants Facebook Page accompanied by the following sentences: "Do you have what it takes to arrange flowers this good?  Probably not.  You probably shouldn't even try because if you fail people will laugh at you.  Sorry, but it's true."  DuJan is without knowledge or information sufficient to form a belief as to whether the flowers in the picture are "Ms. Bittman's original flower arrangements."

126.    Ms. Bittman holds the copyright interest to all of the photographs containing images of her and her floral arrangements used by Defendants Fox and DuJan on the Facebook Page.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 126.

127.    In addition to the Green Dress Photograph, Ms. Bittman has filed for registrations for these additional photographs.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 127.

128.    In creating the Facebook Page, Defendants Fox and DuJan impersonated Ms. Bittman.

**ANSWER:**  Denied.

129.    In creating the Facebook Page, Defendants Fox and DuJan impersonated Ms. Bittman's floral design business.

**ANSWER:**  Denied.

130.    To create the Facebook Page, Defendants Fox and DuJan created an account with Facebook ("Facebook Account").

**ANSWER:**  Fox and DuJan state that DuJan used his Facebook account to create the Sassy Plants Facebook Page.  Fox and DuJan deny the remaining allegations in Paragraph 130.

131.    Defendants Fox and DuJan will receive any communications intended for Ms. Bittman sent to the Facebook Page and/or Facebook Account.

**ANSWER:**  Denied.

132.    Upon information and belief, third parties sent communications intended for Ms. Bittman to the Facebook Page and/or Facebook Account.

**ANSWER:**  Denied.

133.    Defendants Fox and DuJan have received communications intended for Ms. Bittman sent to the Facebook Page and/or Facebook Account.

**ANSWER:**  Denied.

134.     The statements and posts on the Facebook Page, including repeated distasteful references to individuals and objects as "fruits," falsely make Ms. Bittman and her floral business to appear prejudiced against gay individuals.

**ANSWER:** Denied.

135.     The numerous statements and posts on the Facebook Page, all written in the first person in a callous, mocking tone, make Ms. Bittman and her floral design business appear unprofessional.

**ANSWER:** Denied.

136.     The statements and posts on the Facebook Page ("Sassy Plants Statements") prejudice Ms. Bittman and her floral design business.

**ANSWER:** Denied.

*Statements on Sexual Orientation*

137.     Since the July 8 Video, the Defendants have made efforts to characterize Ms. Bittman as a "gay hater."

**ANSWER:** Denied.

138.     On August 21, 2014, Defendant Kleinman expressly characterized Ms. Bittman as a "gay hater" ("Gay Hater Statement").

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 138.

139.     Defendant Kleinman has characterized Ms. Bittman as a "homophobe."

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 139.

140.     Ms. Bittman is not a "gay hater" or "homophobe."

**ANSWER:** Denied.

**Concerted Conduct**

141.   The foregoing statements made by the Defendants shall hereinafter be referred to collectively as the "False and Defamatory Statements."

**ANSWER:** Paragraph 141 does not contain factual allegations to which a response is required.

To the extent a response is deemed required, Fox and DuJan deny the allegations in

Paragraph 141.

142.   Where any one Defendant did not actually post one or more of the statements or photos about the Plaintiff, such Defendant collaborated and worked in concert with the other Defendants to cause such statements or photos to be posted.

**ANSWER:** Denied.

**Public Perception**

143.   Since the publication of the False and Defamatory Statements, any individual reading the statements might believe that the Plaintiff engaged in criminal conduct.

**ANSWER:** Denied.

144.   Since the publication of the False and Defamatory Statements, any individual reading the statements might believe that the Plaintiff hates gay individuals.

**ANSWER:** Denied.

145.   Since the publication of the False and Defamatory Statements, any individual reading the statements might believe that the Plaintiff lacks integrity in her employment and profession.

**ANSWER:** Denied.

146.   Since the publication of the False and Defamatory Statements, any individual reading the statements might be prejudiced against the Plaintiff in her profession.

**ANSWER:** Denied.

147.   Upon information and belief, a significant number of the Plaintiff's colleagues, peers and supervisors have become aware of and read the False and Defamatory Statements.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 147.

148.    Patrons of the Orland Park Public Library have become aware of and read the False and Defamatory Statements.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 148.

149.    Based on the False and Defamatory Statements, patrons of the Orland Park Public Library have submitted written complaints to the Orland Park Public Library about Ms. Bittman.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 149.

**Intent and Actual Malice**

150.    The Defendants acted with intent and actual malice because they intended to harm the Plaintiff.

**ANSWER:**  Denied.

151.    The foregoing conduct engaged in by the Defendants shall hereinafter be called the Wrongful Conduct.

**ANSWER:**  Paragraph 151 does not contain factual allegations to which a response is required. To the extent a response is deemed required, Fox and DuJan deny the allegations in Paragraph 151.

**Harm**

152.    The Plaintiff has suffered, and continues to suffer, harm arising from the Defendants' Wrongful Conduct.

**ANSWER:**  Denied.

153.    The Defendants' Wrongful Conduct has caused the Plaintiff to suffer and continue to suffer from harmed reputation, humiliation, embarrassment, and emotional distress.

**ANSWER:**  Denied.

**CLAIMS FOR RELIEF COUNT ONE**
**AS AND FOR A FIRST CAUSE OF ACTION**
**VIOLATION OF COMPUTER FRAUD AND ABUSE ACT**
**18 U.S.C. § 1030**
**(AGAINST DEFENDANTS FOX and DUJAN)**

The claim asserted in Paragraphs 154 - 176 has been dismissed, and Fox and DuJan are

therefore not required to answer those allegations. To the extent an answer is deemed required,

Fox and DuJan deny the allegations in Paragraphs 154 - 176.

**COUNT TWO**
**AS AND FOR A SECOND CAUSE OF ACTION**
**VIOLATION OF STORED COMMUNICATIONS ACT**
**18 U.S.C. § 2701, et seq.**
**(AGAINST DEFENDANTS FOX and DUJAN)**

The claim asserted in Paragraphs 177 - 199 has been dismissed, and Fox and DuJan are

therefore not required to answer those allegations. To the extent an answer is deemed required,

Fox and DuJan deny the allegations in Paragraphs 177 - 199.

**COUNT THREE**
**AS AND FOR A THIRD CAUSE OF ACTION**
**VIOLATION OF THE ELECTRONIC COMMUNICATION PRIVACY ACT**
**18 USC § 2510, et seq.**
**(AGAINST DEFENDANTS FOX and DUJAN)**

200.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 153 above in this Third Count as though fully set forth herein.

**ANSWER:**  Fox and DuJan repeat their responses to the allegations in Paragraphs 1 through 153 as if fully set forth herein.

201.    Defendants Fox and DuJan created one or more accounts and/or Facebook pages using the Plaintiff's personal information.

**ANSWER:**  Denied.

202.    Upon creating accounts and/or Facebook pages using the Plaintiff's personal information, Defendants Fox and DuJan obtained access to such accounts.

**ANSWER:**  Denied.

27

203.    By obtaining access to the accounts and/or Facebook pages created using the Plaintiff's personal information, Defendants Fox and DuJan intercepted electronic communications intended for the Plaintiff at such accounts and/or pages.

**ANSWER:**  Denied.

204.    Defendants Fox and DuJan intentionally intercepted electronic communications intended for the Plaintiff.

**ANSWER:**  Denied.

205.    Defendants Fox and DuJan intentionally intercepted electronic communications intended for the Plaintiff each time they received an electronic communication intended for the Plaintiff.

**ANSWER:**  Denied.

206.    Upon information and belief, Defendants Fox and DuJan intentionally intercepted electronic communications intended for the Plaintiff on many occasions.

**ANSWER:**  Denied.

207.    In doing so, Defendants Fox and DuJan intentionally used an electronic device to acquire the contents of electronic communications intended for the Plaintiff.

**ANSWER:**  Denied.

208.    Upon information and belief, Defendants Fox and DuJan intentionally used the intercepted electronic communications intended for the Plaintiff knowing the electronic communications to have been intercepted.

**ANSWER:**  Denied.

209.    Upon information and belief, Defendants Fox and DuJan intentionally used the intercepted electronic communications intended for the Plaintiff to harm her knowing the electronic communications to have been intercepted.

**ANSWER:**  Denied.

210.    As a direct and proximate result of the conduct by Defendants Fox and DuJan described in this Count Three, the Plaintiff has suffered and continues to suffer damages.

**ANSWER:**  Denied.

211.    The Plaintiff has suffered and continues to suffer damages including, but not limited to, invasion of her privacy and the costs and expenses of pursuing her remedies.

**ANSWER:**  Denied.

212.    By engaging in the conduct described in this Count Three, Defendants Fox and DuJan violated the Electronic Communications Privacy Act ("ECPA"), 18 U.S.C. §2510, et seq.

**ANSWER:** Denied.

213.    Defendants Fox and DuJan violated the ECPA on more than one day.

**ANSWER:** Denied.

214.    In particular, Defendants Fox and DuJan violated the ECPA each day that they intercepted communications intended for the Plaintiff.

**ANSWER:** Denied.

215.    WHEREFORE, based on the violation of the Electronic Communications Privacy Act by Defendants Fox and DuJan, the Plaintiff seeks:

A.    An award of the greater of actual or statutory damages provided for pursuant to 18 U.S.C. §2520 (b)(2) and (c)(2);

B.    An award of punitive damages pursuant to 18 U.S.C. §2520 (b)(2);

C.    An award of her attorney's fees and costs reasonably incurred pursuant to 18 U.S.C. §2520 (b)(3);

D.    Injunctive relief in the form of an order:

i.    permanently enjoining Defendants Fox and DuJan from intercepting electronic communications intended for the Plaintiff;

ii.    permanently enjoining Defendants Fox and DuJan from accessing and/or attempting to access the Plaintiff's electronic accounts; and,

iii.    requiring Defendants Fox and DuJan to permanently erase all electronic and other copies of the Plaintiff's communications the Defendants obtained unlawfully; and,

E.    Any such other relief to which the Plaintiff may be entitled or as justice may require.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to seek an award of actual or statutory damages, punitive damages, attorney's fees and costs, injunctive relief, and other relief, but deny that Plaintiff can state a claim or that she is entitled to any of the requested relief.

**COUNT FOUR**
**AS AND FOR A FOURTH CAUSE OF ACTION**
**COPYRIGHT INFRINGEMENT**
**17 USC § 101, et seq.**
**(AGAINST DEFENDANTS FOX AND DUJAN)**

216.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 153 above in this Fourth Count as though fully set forth herein.

**ANSWER:** Fox and DuJan repeat their responses to the allegations in Paragraphs 1 through 153

as if fully set forth herein.

217.     The Plaintiff has published photographs of herself and her floral arrangements on Facebook.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 217.

218.     The Plaintiff possesses the copyright interest in these photographs.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 218.

219.     With respect to one of these photographs, the Green Dress Photograph, the Plaintiff has registered her copyright with the United States Copyright Office, under the registration number VA0001938156, 2015-01-15.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 219.

220.     With respect to the remaining photographs at issue in this complaint, the Plaintiff has filed applications to register the copyrights in these additional photographs.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 220.

221.     Defendants Fox and DuJan published the Plaintiff's photographs at issue in this complaint on the Facebook Page without authorization.

**ANSWER:** Denied.

222.    In particular, Defendants Fox and DuJan published the Green Dress Photograph on the Facebook Page without authorization.

**ANSWER:**  Fox and DuJan agree a photograph posted by DuJan on the Sassy Plants Facebook Page appears to show Ms. Bittman wearing a green dress.  Fox and DuJan deny the remaining allegations in Paragraph 222.

223.    Within the last three months, Defendants Fox and DuJan have republished material elements of the Green Dress Photograph on the Facebook Page without authorization.

**ANSWER:**  Fox and DuJan agree that posts by DuJan on the Sassy Plants Facebook Page in December 2014 appear to show Ms. Bittman wearing a green dress.  Fox and DuJan deny the remaining allegations in Paragraph 223.

224.    By doing so Defendants Fox and DuJan copied constituent elements of the Green Dress Photograph.

**ANSWER:**  Fox and DuJan agree a photograph posted by DuJan on the Sassy Plants Facebook Page appears to show Ms. Bittman wearing a green dress.  Fox and DuJan deny the remaining allegations in Paragraph 224.

225.    The Plaintiff did not authorize, permit or consent to the use of the Green Dress Photograph and/or its constituent elements by Defendants Fox and DuJan.

**ANSWER:**  Denied.

226.    By using the Green Dress Photograph, Defendants Fox and DuJan violated the Plaintiff's exclusive right to reproduce the works in violation of 17 U.S.C.§ 106(1) and 501.

**ANSWER:**  Denied.

227.    By creating derivative works based on the Green Dress Photograph, Defendants Fox and DuJan violated the Plaintiff's exclusive right to create derivative works in violation of §§17 U.S.C. 106(2) and 501.

**ANSWER:**  Denied.

228.    By using the Green Dress Photograph, Defendants Fox and DuJan violated the Plaintiff's exclusive right to redistribute the work in violation of 17 U.S.C.§ 106(3) and 501.

**ANSWER:**  Denied.

229.    By using the Green Dress Photograph, Defendants Fox and DuJan violated the Plaintiff's exclusive right to display the copyrighted works in violation of 17 U.S.C.§ 106(5) and 501.

**ANSWER:** Denied.

230.    By engaging in the foregoing conduct and violating of the Plaintiff's right, Defendants Fox and DuJan have infringed the Plaintiff's copyright in the Green Dress Photograph.

**ANSWER:** Denied.

231.    Defendants Fox and DuJan' infringement was willful.

**ANSWER:** Denied.

232.    Upon obtaining the registration for the additional photographs infringed by Defendants Fox and DuJan, the Plaintiff intends to assert her rights and remedies with respect to those photographs.  In particular, she intends to amend the complaint to add claims for additional infringements.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as

to the truth of the allegations in Paragraph 232.

233.    WHEREFORE, based the violation of the United States Copyright Act by Defendants Fox and DuJan, the Plaintiff seeks:

    A.    An award of the greater of actual or statutory damages provided for pursuant to 17 U.S.C. §504 (a) and (c);

    B.    An award of her attorney's fees and costs reasonably incurred pursuant to 17 U.S.C. §505;

    C.    Injunctive relief in the form of an order:

        i.    permanently enjoining Defendants Fox and DuJan from continuing to infringe the Plaintiff's copyrighted work;

        ii.    causing Defendants Fox and DuJan to permanently delete, remove or destroy all copies of the Plaintiff's copyrighted work; and,

    D.    Any such other relief to which the Plaintiff may be entitled or as justice may require.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to seek an award of actual or statutory damages, attorney's fees and costs, injunctive relief, and other relief, but deny that Plaintiff can state a claim or that she is entitled to any of the requested relief.

## COUNT FIVE
## AS AND FOR A FIFTH CAUSE OF ACTION
## DEFAMATION PER SE
## (AGAINST ALL DEFENDANTS)

234.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 153 above in this Fifth Count as though fully set forth herein.

**ANSWER:** Fox and DuJan repeat their responses to the allegations in Paragraphs 1 through 153 as if fully set forth herein.

235.    The July 8 Video falsely states that the Plaintiff was arrested for breach of peace and disorderly conduct.

**ANSWER:** Denied.

236.    The July 8 Video falsely states that the Plaintiff carried a weapon.

**ANSWER:** Denied.

237.    The July 8 Video falsely states that the Plaintiff used an anti-gay hateful term.

**ANSWER:** Denied.

238.    The July 8 Video falsely states that the Plaintiff called someone a "fruit."

**ANSWER:** Denied.

239.    The July 8 Video falsely imputes that the Plaintiff engaged in criminal conduct.

**ANSWER:** Denied.

240.    The July 8 Video falsely implies that the Plaintiff lacks integrity in her employment.

**ANSWER:** Denied.

241.    The July 8 Video represents the publication of false and defamatory statements of fact by the Defendants about the Plaintiff.

**ANSWER:** Denied.

33

242.    The Original July 8 Caption falsely states that the Plaintiff was cited for breach of peace and disorderly conduct.

**ANSWER:** Denied.

243.    The Original July 8 Caption falsely states that the Plaintiff attempted to start a fight.

**ANSWER:** Denied.

244.    The Original July 8 Caption falsely states that the Plaintiff used an anti-gay hateful term.

**ANSWER:** Denied.

245.    The Original July 8 Caption falsely imputes that the Plaintiff engaged in criminal conduct.

**ANSWER:** Denied.

246.    The Original July 8 Caption prejudices the Plaintiff in her employment.

**ANSWER:** Denied.

247.    The Original July 8 Caption falsely implies that the Plaintiff lacks integrity in her employment.

**ANSWER:** Denied.

248.    The Original July 8 Caption represented the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

**ANSWER:** Denied.

249.    The July 8 Caption falsely states that the Plaintiff was cited for breach of the peace and disorderly conduct.

**ANSWER:** Denied.

250.    The July 8 Caption falsely states that the Plaintiff engaged in shameful behavior.

**ANSWER:** Denied.

251.    The July 8 Caption falsely states that the Plaintiff engaged in highly unprofessional behavior.

**ANSWER:** Denied.

252. The July 8 Caption falsely imputes that the Plaintiff engaged in criminal activity.

**ANSWER:** Denied.

253. The July 8 Caption prejudices the Plaintiff in her employment.

**ANSWER:** Denied.

254. The July 8 Caption falsely implies that the Plaintiff lacks integrity in her employment.

**ANSWER:** Denied.

255. The July 8 Caption represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

**ANSWER:** Denied.

256. The Republication Statement falsely imputes that the Plaintiff attacked a gay man.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 256.

257. The Republication Statement falsely imputes that the Plaintiff engaged in criminal activity.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 257.

258. The Republication Statement prejudices the Plaintiff in her employment.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 258.

259. The Republication Statement falsely imputes that the Plaintiff lacks integrity in her employment.

**ANSWER:** Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 259.

260.    The Republication Statement represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

**ANSWER:**  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 260.

261.    The foregoing False and Defamatory Statements identify the Plaintiff by name.

**ANSWER:**  Fox and DuJan agree that the July 8 Video and accompanying captions included Plaintiff's name, but deny that these statements were false or defamatory.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 261.

262.    Persons other than the Plaintiff and the Defendants would have and actually have reasonably understood that the foregoing False and Defamatory Statements related to and were about the Plaintiff.

**ANSWER:**  Fox and DuJan agree that the July 8 video and accompanying captions included Plaintiff's name, but deny that these statements were false or defamatory.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 262.

263.    The foregoing False and Defamatory Statements identify the Plaintiff's place of employment, thereby prejudicing her in her employment.

**ANSWER:**  Fox and DuJan agree that the July 8 video and accompanying captions state Plaintiff is employed by the Library, but deny that these statements were false or defamatory.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 263 related to the Republication Statement.  Fox and DuJan deny the remaining allegations in Paragraph 263.

264.    The Defendants made the foregoing False and Defamatory Statements on and through the Internet.

**ANSWER:**  Fox and DuJan agree that DuJan posted the July 8 video and accompanying captions to a publicly-accessible YouTube page, but deny that these statements were false or defamatory.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 264 related to the Republication Statement. Fox and DuJan deny the remaining allegations in Paragraph 264.

265.    By publishing the foregoing False and Defamatory Statements on and through the Internet, the Defendants intentionally published the statements to a wide audience.

**ANSWER:**  Fox and DuJan agree that DuJan posted the July 8 video and accompanying captions to a publicly-accessible YouTube page, but deny that these statements were false or defamatory.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 265 related to the Republication Statement. Fox and DuJan deny the remaining allegations in Paragraph 265.

266.    The Defendants presented the foregoing False and Defamatory Statements as fact.

**ANSWER:**  Denied.

267.    The foregoing False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendants to third parties.

**ANSWER:**  Denied.

268.    The Defendants made the foregoing False and Defamatory Statements with actual malice knowing the falsity of the statements.

**ANSWER:**  Denied.

269.    If the Defendants did not act with actual malice, they acted with reckless disregard for the falsity of the foregoing False and Defamatory Statements to the detriment of the Plaintiff.

**ANSWER:**  Denied.

270.     As a result of the Defendants' conduct and the publication of the foregoing False and Defamatory Statements, the Plaintiff has suffered and continues to suffer damages including, but not limited to harmed reputation, embarrassment, and invasion of her privacy.

**ANSWER:** Denied.

271.     WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' per se defamation of her.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to seek an award of compensatory and punitive damages, but deny that Plaintiff can state a claim or that she is entitled to any of the requested relief.

**COUNT SIX**
**AS AND FOR A SIXTH CAUSE OF ACTION**
**FALSE LIGHT**
**(AGAINST ALL DEFENDANTS)**

272.     The Plaintiff hereby incorporates by reference Paragraphs 1 through 153 above in this Sixth Count as though fully set forth herein.

**ANSWER:** Fox and DuJan repeat their responses to the allegations in paragraphs 1 through 143 as if fully set forth herein.

273.     The Defendants published the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements concerning the Plaintiff to third parties.

**ANSWER:** Fox and DuJan deny that Fox made any of these posts.  Fox and DuJan agree that DuJan posted the July 8 video and its accompanying captions to a publicly-accessible YouTube page.  Fox and DuJan deny that they posted the Republication Statements.

274.     The Defendants published the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements to a wide audience on the Internet.

**ANSWER:** Fox and DuJan state that DuJan posted the July 8 video and accompanying captions to a publicly-accessible YouTube page.  Fox and DuJan deny the remaining allegations in Paragraph 274.

275.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements identified the Plaintiff by name.

**ANSWER:**  Fox and DuJan agree that the July 8 video and accompanying captions included Plaintiff's name.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 275.

276.    Persons other than the Plaintiff and the Defendants would and actually have reasonably understood that the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements related to and were about the Plaintiff.

**ANSWER:**  Fox and DuJan agree that the July 8 video and accompanying captions included Plaintiff's name.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 276.

277.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements cast the Plaintiff in a false light by falsely portraying her as lacking integrity in her employment.

**ANSWER:**  Denied.

278.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements cast the Plaintiff in a false light by falsely portraying her as lacking the abilities to perform in her employment.

**ANSWER:**  Denied.

279.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements cast the Plaintiff in a false light by falsely imputing criminal conduct.

**ANSWER:**  Denied.

280.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements prejudice the Plaintiff in her employment.

**ANSWER:**  Denied.

281.    The July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements made by the Defendants about the Plaintiff are and would be highly offensive to a reasonable person.

**ANSWER:**  Denied.

282.    The Defendants made the July 8 Video, the Original July 8 Caption, the July 8 Caption, and the Republication Statements with actual malice, knowing the falsity of the statements.

**ANSWER:** Denied.

283.    As a result of the Defendants' casting the Plaintiff in a false light, the Plaintiff has suffered and continues to suffer damages including, but not limited to, suffering, harmed reputation, embarrassment, and emotional distress.

**ANSWER:** Denied.

284.    WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' portrayal of her in a false light.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to seek an award of compensatory and punitive damages, but deny that Plaintiff can state a claim or that she is entitled to any of the requested relief.

## COUNT SEVEN
### AS AND FOR A SEVENTH CAUSE OF ACTION
### ASSAULT
### (AGAINST DEFENDANT DUJAN)

The claim asserted in Paragraphs 285 - 303 against DuJan has been dismissed, and DuJan is therefore not required to answer those allegations.  The claim asserted in Paragraphs 285 - 303 is not directed to Fox, and Fox is therefore not required to answer those allegations.  To the extent an answer is deemed required, Fox and DuJan deny the allegations in Paragraphs 285 - 303.

## COUNT EIGHT
### AS AND FOR AN EIGHTH CAUSE OF ACTION
### DEFAMATION *PER SE*
### (AGAINST DEFENDANTS FOX, DUJAN and KLEINMAN)

304.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 153 above in this Eighth Count as though fully set forth herein.

**ANSWER:** Fox and DuJan repeat their responses to the allegations in paragraphs 1 through 153 as if fully set forth herein.

40

305.    The Police Report Statement falsely states that the Plaintiff wrongfully files police reports in the course of her employment at the Orland Park Public Library.

**ANSWER:**  Denied.

306.    The Police Report Statement falsely states that the Plaintiff uses the police department as a weapon of intimidation.

**ANSWER:**  Denied.

307.    The Police Report Statement falsely states that the Plaintiff engages in criminal activity.

**ANSWER:**  Denied.

308.    The Police Report Statement represents the publication of a false and defamatory statement of fact by the Defendant about the Plaintiff.

**ANSWER:**  Denied.

309.    The Google Photo Statement falsely implies that the Plaintiff drinks alcohol while working in her official capacity at the Orland Park Public Library.

**ANSWER:**  Denied.

310.    The Google Photo Statement falsely imputes that the Plaintiff lacks integrity in her profession.

**ANSWER:**  Denied.

311.    The Google Photo Statement represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

**ANSWER:**  Denied.

312.    The Gay Hater Statement falsely implies that the Plaintiff is a homophobic.

**ANSWER:**  Denied.

313.    The Gay Hater Statement prejudices the Plaintiff in her employment.

**ANSWER:**  Denied.

314.    The Gay Hater Statement falsely implies that the Plaintiff lacks integrity in her employment.

**ANSWER:**  Denied.

41

315.    The Gay Hater Statement represents the publication of a false and defamatory statement of fact by the Defendants about the Plaintiff.

**ANSWER:** Denied.

316.    The Defendants presented the foregoing False and Defamatory Statements as fact.

**ANSWER:** Denied.

317.    The foregoing False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Defendants to third parties.

**ANSWER:** Denied.

318.    The Defendants made the foregoing False and Defamatory Statements with actual malice knowing the falsity of the statements.

**ANSWER:** Denied.

319.    If the Defendants did not act with actual malice, they acted with reckless disregard for the falsity of the foregoing False and Defamatory Statements to the detriment of the Plaintiff.

**ANSWER:** Denied.

320.    As a result of the Defendants' conduct and the publication of the statements, the Plaintiff has suffered and continues to suffer damages including, but not limited to harmed reputation, embarrassment, and, invasion of her privacy.

**ANSWER:** Denied.

321.    WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from the Defendants' *per se* defamation of her.

**ANSWER:** Fox and DuJan agree that Plaintiff purports to seek an award of compensatory and punitive damages, but deny that Plaintiff can state a claim or that she is entitled to any of the requested relief.

**COUNT NINE**
**AS AND FOR A NINTH CAUSE OF ACTION**
**FALSE LIGHT**
**(AGAINST DEFENDANTS FOX, DUJAN and KLEINMAN)**

322.    The Plaintiff hereby incorporates by reference Paragraphs 1 through 153 above in this Ninth Count as though fully set forth herein.

**ANSWER:**  Fox and DuJan repeat their responses to the allegations in paragraphs 1 through 153 as if fully set forth herein.

323.    Defendants Fox, DuJan, and Kleinman published the Police Statement, the Google Photo Statement, and the Gay Hater Statement concerning the Plaintiff to third parties.

**ANSWER:**  Fox and DuJan deny that Fox posted any of these statements.  Fox and DuJan agree that DuJan posted the Police Statement and the Google Photo Statement to the Fans of Megan Fox Facebook Page.  Fox and DuJan deny that they posted the Gay Hater Statement.

324.    The Defendants published the Police Statement, the Google Photo Statement, and the Gay Hater Statement to a wide audience on the Internet.

**ANSWER:**  Fox and DuJan state that DuJan posted the Police Statement and Google Photo Statement on a publicly-accessible Facebook Page.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the allegations in Paragraph 324 relating to the Gay Hater Statement.  Fox and DuJan deny the remaining allegations in Paragraph 324.

325.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement identified the Plaintiff by name.

**ANSWER:**  Fox and DuJan agree that the Police Statement and the Google Photo Statement included Plaintiff's name.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 325.

326.    Persons other than the Plaintiff and the Defendants would and actually have reasonably understood that the Police Statement, the Google Photo Statement, and the Gay Hater Statement related to and were about the Plaintiff.

**ANSWER:**    Fox and DuJan agree that the Police Statement and Google Photo Statement included Plaintiff's name.  Fox and DuJan are without knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 326.

327.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement cast the Plaintiff in a false light by falsely portraying her as lacking integrity in her employment.

**ANSWER:**  Denied.

328.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement cast the Plaintiff in a false light by falsely portraying her as lacking the abilities to perform in her employment.

**ANSWER:**  Denied.

329.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement prejudice the Plaintiff in her employment.

**ANSWER:**  Denied.

330.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement cast the Plaintiff in a false light by falsely imputing criminal conduct.

**ANSWER:**  Denied.

331.    The Police Statement, the Google Photo Statement, and the Gay Hater Statement made by Defendants Fox, DuJan and Kleinman about the Plaintiff are and would be highly offensive to a reasonable person.

**ANSWER:**  Denied.

332.    Defendants Fox, DuJan and Kleinman made the Police Statement, the Google Photo Statement, and the Gay Hater Statement with actual malice, knowing the falsity of the statements.

**ANSWER:**  Denied.

333.    As a result of Defendants Fox, DuJan and Kleinman's casting the Plaintiff in a false light, the Plaintiff has suffered and continues to suffer damages including, but not limited to, suffering, harmed reputation, embarrassment, and emotional distress.

**ANSWER:**  Denied.

334.    WHEREFORE, the Plaintiff seeks an award of compensatory and punitive damages arising from Defendants' portrayal of her in a false light.

**ANSWER:**  Fox and DuJan agree that Plaintiff purports to seek an award of compensatory and punitive damages, but deny that Plaintiff can state a claim or that she is entitled to any of the requested relief.

**COUNT TEN**
**AS AND FOR A TENTH CAUSE OF ACTION**
**DEFAMATION *PER SE***
**(AGAINST DEFENDANTS FOX and DUJAN)**

The claim asserted in Paragraphs 335 - 351 has been dismissed, and Fox and DuJan are therefore not required to answer those allegations.  To the extent an answer is deemed required, Fox and DuJan deny the allegations in Paragraphs 335 - 351.

**COUNT ELEVEN**
**AS AND FOR A ELEVEN CAUSE OF ACTION FALSE LIGHT**
**(AGAINST DEFENDANTS FOX and DUJAN)**

The claim asserted in Paragraphs 352 - 363 has been dismissed, and Fox and DuJan are therefore not required to answer those allegations.  To the extent an answer is deemed required, Fox and DuJan deny the allegations in Paragraphs 352 - 363.

**COUNT TWELVE**
**AS AND FOR AN TWELFTH CAUSE OF ACTION**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(AGAINST DEFENDANTS FOX and DUJAN)**

The claim asserted in Paragraphs 364 - 375 has been dismissed, and Fox and DuJan are therefore not required to answer those allegations.  To the extent an answer is deemed required, Fox and DuJan deny the allegations in Paragraphs 364 - 375.

**COUNT THIRTEEN**
**AS AND FOR AN THIRTEENTH CAUSE OF ACTION**
**INJUNCTIVE RELIEF**
**(AGAINST ALL DEFENDANTS)**

The claim asserted in Paragraphs 376 - 388 has been dismissed, and Fox and DuJan are therefore not required to answer those allegations. To the extent an answer is deemed required, Fox and DuJan deny the allegations in Paragraphs 376 - 388.

**GENERAL**

389. Where conditions precedent are alleged, the Plaintiff avers that all conditions precedent have been performed or have occurred.

**ANSWER:** Denied.

390. The Plaintiff demands a jury trial.

**ANSWER:** Fox and DuJan deny each and every allegation in the Second Amended Complaint except as expressly admitted and qualified above. Fox and DuJan request that the Court find that Plaintiff is not entitled to any judgment or relief.

**AFFIRMATIVE DEFENSES**

Fox and DuJan assert the following affirmative defenses to Plaintiff's claims, without admitting the validity of any of Plaintiff's claims, and without assuming the burden of proof where the burden would otherwise be on Plaintiff or any other party.

**Affirmative Defenses to All Claims**

**First Affirmative Defense**
**(Illinois Anti-SLAPP Law)**

1. Plaintiff's claims are barred by the Illinois Citizen Participation Act as a Strategic Lawsuit Against Public Participation. *See* 735 ILCS 110/5, 110/15.

2. Fox and DuJan are writers and community activists who have openly criticized Orland Park Public Library (the "Library") practices and policies that have allowed child

pornography to be viewed on the Library's public-access computers and have resulted in a series of indecent exposures occurring in the Library's public computer room.

3.     Fox and DuJan have also spoken publicly about the Orland Park Public Library Board's repeated failure to comply with the Illinois Open Meetings Act, as determined in three opinions from the Illinois Attorney General's Public Access Bureau responding to complaints from Fox and/or DuJan.

4.     Likewise, Fox and DuJan have publicly criticized the Library for repeatedly failing to comply with the Illinois Freedom of Information Act, as also determined in numerous Illinois Attorney General Public Access Bureau opinions.

5.     Fox and DuJan's actions and statements that are the subject of Plaintiff's claims were in furtherance of their right to petition, speak, associate, or otherwise participate in government to obtain a favorable government action—changes in the Orland Park Public Library's policies and practices regarding Internet usage and compliance with transparency laws.

6.     To inform members of the public about events occurring at the Library and to further their campaign to change Library policies and practices, Fox and DuJan maintain the Fans of Megan Fox Facebook Page and the Story Time with Megan Fox YouTube channel.

7.     Various statements at issue in this case, including the July 8 Video and captions, the Police Report Statement, and the Google Photo Statement were posted by DuJan on the Fans of Megan Fox Facebook Page, the Story Time with Megan Fox YouTube channel, or both, in order to inform the public about the actions of the Library Board and staff.

8.     Fox and DuJan also discuss other issues not related to the Library on the Fans of Megan Fox Facebook Page and the Story Time with Megan Fox YouTube channel.

9.     Plaintiff's claims are solely based on, and were brought in response to, Fox and DuJan's actions in furtherance of their First Amendment rights.

10.     Plaintiff's claims are meritless.

11.     Plaintiff's claims were filed in retaliation against Fox and DuJan's legitimate exercise of their First Amendment rights and in order to deter Fox and DuJan from further exercising those rights.

12.     Here, Plaintiff is not genuinely seeking relief for damages for alleged defamation or other acts, and indeed, Plaintiff will be unable to prove any damages whatsoever from any of Fox and DuJan's alleged conduct.

13.     Instead, Plaintiff is bringing claims not intending to win but instead to chill Fox and DuJan's speech and discourage any opposition to Plaintiff or the Library's policies through delay, expense, and distraction.

14.     Plaintiff's claims were filed against Fox and DuJan in the midst of Fox and DuJan's campaign to change Library policy.

15.     In late 2013 and throughout 2014, Fox and DuJan attended Library Board meetings and spoke publicly, both at the meetings and online, about the Library's Internet usage policies, the Library's failure to report illegal activities occurring at the Library, including the viewing of child pornography, and the Library's failure to comply with transparency laws.

16.     Indeed, Fox and DuJan uncovered numerous examples of the Library violating the Illinois Open Meetings Act, a statute designed to protect the public's right to participate in and stay informed about state and local government.

17.     Plaintiff filed her complaint against Fox and DuJan after being encouraged to do so by an Orland Park Public Library Board member during a public Board meeting.

18.     During the August 18, 2014 Library Board meeting, Board member Diane Jennings discussed the July 8 video and accompanying captions and then stated, "I wish that Bridget would hire an attorney and sue them for defamation."

19.     Two months later, on October 20, 2014, Plaintiff organized for Fox and DuJan to be served with the Complaint during a Library Board meeting, shortly after they made public comments critical of the Library's practices, including the Library's failure to comply with Fox and DuJan's FOIA requests.

20.     Deciding to publicly serve Fox and DuJan with the Complaint during a public Board meeting was designed not only to chill Fox and DuJan's criticism of the Library but also to serve as a warning to other members of the public who might be considering speaking out against the actions of a public body.

21.     Fox and DuJan are entitled to their costs and attorney's fees, as provided under the Illinois Citizen Participation Act. 735 ILCS 110/25.

## Second Affirmative Defense
### (Unclean Hands)

22.     Plaintiff's claims are barred by the doctrine of unclean hands.

23.     Plaintiff's history of dishonest, illegal, unfair, defamatory, and improper conduct over the last 20 months is too lengthy to fully recount in detail here.

24.     For example, on or about July 9, 2014, Plaintiff made false statements to an Orland Park Police Officer concerning the events of July 8, 2014.

25.     On July 9, 2014, Plaintiff falsely told Orland Park Police Officer James Grimmett that she did not call DuJan a "fruit."

26.     Plaintiff has called DuJan a "fruit" numerous times, including on July 8, 2014.

27. Further, Plaintiff approached Fox and DuJan on July 8, 2014, in an effort to provoke a confrontation or fight.

28. Plaintiff has improperly called the Orland Park Police Department to falsely accuse Fox and DuJan of disorderly conduct and/or disrupting Library Board meetings, including on May 19, 2014.

29. Plaintiff has misused copyright law by orchestrating the transfer to herself of the alleged copyright interests in photographs Plaintiff did not take in order to punish Fox and DuJan for the criticisms of Plaintiff and the Library and to prevent Fox and DuJan's further speech on this issue.

30. Fox and DuJan do not admit that Plaintiff has any valid copyright interests in the photographs at issue in this case.

31. Plaintiff intentionally made numerous false and defamatory statements about Fox and DuJan, including those described in Fox's counterclaims.

32. For example, on or about November 4, 2013, Plaintiff falsely told reporters, including Donna Vickroy and/or Mike Nolan, that Fox's story "changes over time" regarding the events of October 4, 2013.

33. Plaintiff knows Fox has not changed her story about the events of October 4, 2013, but falsely stated this to members of the media to harm Fox and destroy her credibility as a writer and journalist.

34. Likewise, on or about November 4, 2013, Plaintiff falsely told reporters, including Donna Vickroy and/or Mike Nolan, that Fox did not have her children with her at the Library on October 4, 2013.

35.     Plaintiff knew Fox had her children with her at the Library on October 4, 2013, but made this false statement to members of the media to harm Fox and destroy her credibility has a writer and journalist.

36.     Upon information and belief, Plaintiff has collaborated with the Library Board and other Library employees to avoid compliance with government transparency laws, including the Illinois Freedom of Information Act and the Illinois Open Meetings Act.

37.     Upon information and belief, Plaintiff has worked with other Library employees to improperly withhold documents requested under FOIA, including documents related to a December 2013 Crisis Communications Workshop during which Plaintiff gave a presentation that discussed the Library's response to criticism from Fox and DuJan.

38.     Plaintiff's lawsuit constitutes a strategic lawsuit against public participation because Plaintiff has brought meritless claims in an attempt to punish and chill public criticism of Plaintiff and the Orland Park Public Library, and impede Fox and DuJan's efforts to change Library policies and practices.

39.     Each of these examples of Plaintiff's misconduct was directed at either Fox, DuJan, or both.

40.     Each of these examples of Plaintiff's misconduct constitutes fraud and/or bad faith.

41.     Each of these examples of Plaintiff's misconduct involves the very events and transactions at issue in this case, including but not limited to the events of July 8, 2014; the use of photographs of Bittman on the Sassy Plants Facebook page; Fox and DuJan's public campaign to change Library policies and practices; and Plaintiff's efforts to chill criticism and public debate about the Library and Plaintiff.

42. Each of these examples of Plaintiff's misconduct has harmed Fox and/or DuJan.

43. The misconduct described in Paragraphs 22 through 42 is meant by way of example only. Plaintiff has committed numerous other acts of misconduct, fraud, and bad faith directed toward Fox and DuJan and related to the events at issue in this litigation.

**Affirmative Defense to ECPA Claim (Count 3)**

**Third Affirmative Defense**
**(Consent)**

44. Plaintiff's claim is barred because DuJan was a party to any communications sent to the Sassy Plants Facebook Page and consented to any alleged interception. 18 U.S.C. § 2511(2)(d).

45. DuJan created the Sassy Plants Facebook Page as a parody, protest and satire to respond to anonymous Internet commenters, to parody the Orland Park Public Library's motto and thematic connections to plant life, and to parody the activity of public bodies who use social media such as Facebook in ways that are unintentionally comical.

46. DuJan is a participant in any communication sent to the Sassy Plants Facebook page, since any such communication is sent to DuJan, and only DuJan.

47. Any alleged interception of messages sent to the Sassy Plants Facebook page was not done for the purpose of committing any criminal or tortious act.

**Affirmative Defenses to Copyright Claim (Count 4)**

**Fourth Affirmative Defense**
**(Fair Use)**

48. Plaintiff's cause of action is barred by the doctrine of fair use, 17 U.S.C.A. § 107, including, but not limited to, because such use constituted parody, satire, and/or social commentary.

49.     Kevin DuJan created the Sassy Plants Facebook Page as a parody, protest and satire to respond to anonymous Internet commenters, to parody the Orland Park Public Library's motto and thematic connections to plant life, and to parody the activity of public bodies who use social media such as Facebook in ways that are unintentionally comical.

50.     By posting the allegedly copyrighted works in context with other posts on the Sassy Plants Facebook Page, adding captions and comments, and in some cases combining photographs or adding cartoons, DuJan added his own creative expression to the allegedly copyrighted photographs.

51.     Sassy Plants is not a commercial venture and neither Fox nor DuJan earned any money from use of the allegedly copyrighted works.

52.     Any copying or use constituted fair use, as it was used only to the extent necessary to serve the parody, protest, or satire function of the webpage.

53.     The allegedly copyrighted photographs appear to be casual snapshots with a minimal amount of creative expression.

54.     Upon information and belief, there is no market for the allegedly copyrighted photographs.

55.     DuJan's use of the allegedly copyrighted photographs on Sassy Plants is a parody that does not affect the marketability or value of the original photographs or any derivatives, even if such a market existed.

### Fifth Affirmative Defense
### (No Valid Copyright)

56.     Plaintiff is barred from instituting or maintaining a cause of action for copyright infringement against Fox and DuJan because Plaintiff does not own a valid copyright for the work allegedly infringed, including because, upon information and belief, there was not a valid

transfer of copyright ownership and/or the application Plaintiff submitted to the Copyright Office contained misrepresentations.

**Sixth Affirmative Defense**
**(Failure to Timely Register Copyright)**

57.     Plaintiff is barred from recovering statutory damages and attorney's fees under the Copyright Act by her failure to timely register her copyright in the work either prior to the commencement of the alleged infringement or within three months after the first publication of the work.  17 U.S.C.A. § 412.

**Seventh Affirmative Defense**
**(Misuse Doctrine)**

58.     Plaintiff's copyright claim is barred because Plaintiff is misusing copyright law in violation of the purposes of the Copyright Act, including, but not limited to, Plaintiff's attempts to stifle Fox and DuJan's speech on a public issue.

59.     Plaintiff filed a lawsuit against Fox and DuJan in October 2014 in order to discredit Fox and DuJan and stifle public debate and criticism on matters relating to the policies and practices of the Library.

60.     In January 2015, Plaintiff filed an amended complaint that added a claim of copyright infringement.

61.     Upon information and belief, and without admitting the validity of any such ownership or transfer of ownership, Plaintiff has stated that the ownership interests in several casual snapshots were transferred from the previous copyright owner to Plaintiff.

62.     Upon information and belief, Plaintiff caused this transfer to occur in order to bring a claim for copyright infringement for the purpose of chilling debate about public issues and to punish Fox and DuJan for their criticisms of Orland Park Public Library policies and practices.

63.     Upon information and belief, Plaintiff did not bring this infringement action for any proper purpose of protecting copyright interests, but instead to harass, oppress, and damage Fox and DuJan.

64.     Upon information and belief, Plaintiff's purpose in bringing these claims for copyright infringement contradicts the purposes of the Copyright Act, including encouraging creative expression.

## Eighth Affirmative Defense
### (Express or Implied Authorization/License)

65.     Plaintiff is barred from instituting or maintaining a cause of action for copyright infringement against Fox and DuJan because Plaintiff or the alleged previous copyright owner expressly or impliedly gave consent, license, and/or authorization for the public, including Fox and DuJan, to use the allegedly copyrighted work.

66.     Plaintiff provided express or implied authorization for DuJan to use the photograph, including but not limited to when Plaintiff allegedly publicly posted the photographs on Facebook.

67.     By publicly posting the content on Facebook, Plaintiff consented to allowing everyone, including people outside of Facebook, to access and use that information.

## Ninth Affirmative Defense
### (Innocent Infringer)

68.     Plaintiff's claims for certain copyright infringement remedies or damages should be barred, limited, and/or reduced because any alleged infringement was innocent.  17 U.S.C. §§ 405, 504.

69.     DuJan had a good faith belief that the allegedly copyrighted photographs had been publicly distributed by authority of the alleged copyright owner.

70.     DuJan was not aware of and had no reason to believe that any of his actions constituted an infringement of copyright, and he does not hereby admit that any of his actions constituted copyright infringement.

71.     Upon information and belief, Plaintiff and any alleged prior copyright owners failed to attach notices of their alleged copyrights to the photographs.

**Affirmative Defenses to Defamation and False Light Claims (Count 5, 6, 8, and 9)**

**<u>Tenth Affirmative Defense</u>**
**(Truth)**

72.     Plaintiff's claims are barred because the allegedly false and defamatory statements are substantially true.

73.     The "gist" and "sting" of the allegedly defamatory material is true.

74.     Even if the statements are not technically accurate in every detail, no reasonable jury could find that the statements are not substantially true.

75.     Plaintiff has thrust herself to the forefront of a public controversy to influence the resolution of the issues involved.

76.     Plaintiff is generally well-known in the community and pervasively involved in local society.

77.     Plaintiff holds a public position that invites public scrutiny and discussion of the person holding it.

78.     Plaintiff, as a Library employee with significant responsibility for local government affairs, is a public official.

79.     Plaintiff, as a Library employee responsible for public relations and a high-profile person who deliberately entered the public eye in an area of public debate, is a public figure.

80. Plaintiff, as a Library employee who has publicly responded to Fox and DuJan's campaign to change Library policies, is at least a limited purpose public figure.

81. The statements were made concerning matters of public interest.

## Eleventh Affirmative Defense
### (Absence of Malice)

82. Plaintiff's claims are barred because Fox and DuJan did not act with malice in making any statements disputed by Plaintiff's claims.

83. Plaintiff has thrust herself to the forefront of a public controversy to influence the resolution of the issues involved.

84. Plaintiff is generally well-known in the community and pervasively involved in local society.

85. Plaintiff holds a public position that invites public scrutiny and discussion of the person holding it.

86. Plaintiff, as a Library employee with significant responsibility for local government affairs, is a public official.

87. Plaintiff, as a Library employee responsible for public relations and a high-profile person who deliberately entered the public eye in an area of public debate, is a public figure.

88. Plaintiff, as a Library employee who has publicly responded to Fox and DuJan's campaign to change Library policies, is at least a limited purpose public figure.

89. The statements were made concerning matters of public interest.

90. Fox and DuJan did not make any statements disputed by Plaintiff's claims with knowledge that the statements were false.

91. Fox and DuJan did not make any statements disputed by Plaintiff's claims with reckless disregard of whether the statements were false.

92.     Fox and DuJan did not make any statements disputed by Plaintiff's claims with serious doubts as to the truth of the statements.

## Twelfth Affirmative Defense
### (Innocent Construction)

93.     Plaintiff's claims are barred because the allegedly false and defamatory statements are reasonably capable of innocent construction.

94.     In context, giving the statements their natural and obvious meaning, the statements are capable of a reasonable non-defamatory meaning.

95.     These statements are reasonably capable of innocent construction as parody, hyperbole, opinion, fair comment, and innocuous social media postings.

## Thirteenth Affirmative Defense
### (Opinion)

96.     Plaintiff's claims are barred because the allegedly false and defamatory statements are protected by the First Amendment as statements of opinion.

97.     The statements do not have a precise and readily understood factual meaning.

98.     The statements are not objectively verifiable.

99.     The context of the statements signals that the statements are opinion.

100.    The statements could not reasonably be understood as stating actual facts.

101.    The statements are protected under the First Amendment because they are opinion, parody, hyperbole, fair comment, and innocuous social media postings.

## Fourteenth Affirmative Defense
### (Rhetorical Hyperbole and Imaginative Expression)

102.     Plaintiff's claims are barred because the allegedly false and defamatory statements are protected by the First Amendment as rhetorical hyperbole and imaginative expression.

103.    The statements contain loose, figurative language not capable of having a precise literal definition.

104.    The statements do not have a precise and readily understood factual meaning.

105.    The statements are not objectively verifiable.

106.    The context of the statements signals that the statements are hyperbole.

107.    The statements could not reasonably be understood as stating actual facts.

**Fifteenth Affirmative Defense**
**(Parody)**

108.    Plaintiff's claims are barred because the allegedly false and defamatory statements are protected by the First Amendment as parody.

109.    A reasonably reader would understand that the statements were mere parody and were not intended to convey false assertions of fact.

110.    The statements do not purport to be a statement of fact but rather are expressions of criticism or opinion.

111.    The context of the statements signals that the statements are parody.

112.    The statements could not reasonably be understood as stating actual facts.

**Sixteenth Affirmative Defense**
**(Fair Comment)**

113.    Plaintiff's claims are barred by the fair comment privilege.

114.    The statements were made on commentary pages often used for posting opinions.

115.    The statements were made concerning matters of public concern.

116.    The statements were based on true facts.

117.    The statements represent the actual opinions of Fox and DuJan.

118.    The statements were not made solely for the purpose of causing harm.

## Seventeenth Affirmative Defense
### (Qualified Privilege)

119.    Plaintiff's claims are barred because the allegedly false and defamatory statements are protected by qualified privilege.

120.    The statements were made in situations concerning recognized public interests.

121.    The statements were made about a public figure in the context of a public controversy regarding the policies of the Orland Park Public Library and the conduct of its employees.

122.    Fox and DuJan did not make any statements disputed by Plaintiff's claims with knowledge that the statements were false.

123.    Fox and DuJan did not make any statements disputed by Plaintiff's claims with reckless disregard of whether the statements were false.

124.    Fox and DuJan did not make any statements disputed by Plaintiff's claims with serious doubts as to the truth of the statements.

### RESERVATION OF RIGHTS TO ASSERT ADDITIONAL DEFENSES

Fox and DuJan have not knowingly or intentionally waived any applicable defenses, and they reserve the right to assert and rely upon other applicable defenses that may become available or apparent during discovery in this matter.  Fox and DuJan reserve the right to amend or seek to amend their answer and/or affirmative defenses.

## COUNTERCLAIMS[2]

1.      Pursuant to Rule 13, Federal Rule of Civil Procedure, Defendant and Counterclaimant Megan Fox counterclaims against Plaintiff and Counterdefendant Bridget Bittman as follows:

## SUMMARY

2.      Megan Fox brings counterclaims against Bridget Bittman for defamation *per se*, defamation *per quod*, and false light.

3.      By this action, Fox seeks compensatory and punitive damages, and all other relief to which she may be entitled and as deemed appropriate by this Court.

## PARTIES

4.      Megan Fox is a citizen of the State of Illinois and a resident of Will County, Illinois.

5.      Bridget Bittman is a citizen of the State of Illinois and a resident of Cook County, Illinois.

## JURISDICTION AND VENUE

6.      This Court has supplemental jurisdiction over the subject matter of Counterclaimant Fox's state law claims pursuant to 28 U.S.C. § 1367.

7.      This Court may exercise personal jurisdiction over Counterdefendant Bridget Bittman because she is a citizen and resident of Illinois.

8.      Venue in this district is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in this district.  Further, Bittman directed her conduct toward Fox in this district.

---

[2]     Fox sets forth her counterclaims here for completion and ease of reference.  Fox does not hereby amend any allegations in her counterclaims, which were filed on June 15, 2015.

9.      Bittman has engaged in intentional conduct with actual malice that has harmed Fox.

10.     Fox has been injured by Bittman's conduct and has suffered damages resulting therefrom.

## FACTS

### *Events of October 4, 2013 and Early Public Involvement*

11.     On October 4, 2013, Megan Fox, Kevin DuJan, and Fox's two minor children went to the Orland Park Public Library (the "Library").

12.     Fox went to the children's area with her two children to use a computer.

13.     DuJan sat at a table next to them.

14.     Fox was informed by an Orland Park Public Library librarian that she was required to use the computers in the upstairs adult computer area because Fox was over 18.

15.     The librarian told Fox she had to take her two minor children with her to the adult computer area, despite Fox's protests that she and her daughters were using the children's computer together as a family.

16.     Fox went upstairs to the Library's adult computer area.

17.     While using a computer in the adult section of the Library, Fox noticed that a man sitting nearby was looking at online pornography.

18.     Fox went back downstairs to the children's area and informed DuJan about what she had seen.

19.     Then, DuJan went upstairs to look at the Library patrons using the computers in the adult section, while Fox stayed with her children downstairs in the children's area.

20.     DuJan walked down the aisle of adult computers and saw three men looking at pornographic videos or photographs.

62

21.     Before leaving the Library, Fox reported to a Library employee that she had seen a man viewing pornography on one of the Library's computers.

22.     This Library employee made a statement to the effect of "we have a lot of those," meaning people coming to the Library to view pornography, and informed her that nothing would be done about the man viewing pornography.

23.     On October 5, 2013, Fox sent a letter to Library Director Mary Weimar and various other Orland Park officials informing them of what had occurred on October 4, including that her two young children were with her on October 4, 2013.

24.     On October 5, 2013, Fox also sent a Freedom of Information Act ("FOIA") request to the Library asking for incident reports related to instances of sexual activity occurring in the Library and the viewing of pornography in the Library.

25.     Fox and DuJan decided to attend the October 21, 2013 Library Board meeting.

26.     Bittman also attended the October 21 Library Board meeting.

27.     Bittman is the Public Information Officer for the Orland Park Public Library.

28.     Bittman filmed video of Fox and DuJan throughout the October 21 Board meeting, including while Fox and DuJan spoke to the Board.

29.     At the October 21 Board meeting, Fox spoke publicly about her experiences at the Library on October 4, including the fact that her two young children were present with Fox at the Library that day.

30.     At the October 21 Board meeting, DuJan spoke publicly about witnessing Fox and her two children being asked to use the adult computers upstairs, rather than the computers in the children's area.

31.     At the October 21 Board meeting, DuJan also spoke publicly about personally witnessing three adult men viewing pornography in the Library on October 4, 2013.

### *Child Pornography and Other Illegal Activities Discovered*

32.     At some point after October 21, but before November 4, 2013, the Library produced the incident reports Fox requested in her October 5 FOIA request.

33.     Incident reports are internal documents written by the Library to document events that occur at the Library.

34.     A March 8, 2011 incident report states that a Library patron reported a man viewing child pornography on a Library computer.

35.     The incident reports also show numerous incidents of public masturbation and indecent exposure occurring at the Library.

36.     For example, an incident report from August 20, 2009, reports that "a young man was seen masturbating at computer station fully exposed."

37.     In another incident report from October 23, 2008, it was reported that a man was "fondling himself at the computer station," and the female patron who complained was moved to another computer.

38.     Fox and DuJan notified the public about these incident reports, including by writing about the issue online, handing out flyers in front of the Library on November 4, 2013, and speaking publicly at the November 4, 2013 Board meeting.

### *Bittman Speaks to the Press*

39.     The controversy about pornography and illegal activities at the Library generated interest from the local media, who began interviewing people about the issue, including Fox and Bittman.

40.     Fox is a writer and journalist who relies on her reputation for honesty and credibility to make a living.

41.     In an attempt to downplay the reports of illegal activities occurring at the Library, Bittman began to make false statements to the press in an effort to destroy Fox's credibility.

42.     Bittman's crusade to harm Fox's reputation was successful.

43.     Bittman's false and defamatory statements have severely damaged Fox's reputation as an honest and credible writer.

44.     A November 4, 2013 article by Donna Vickroy and Mike Nolan in *Southtown Star* states as follows:

> Fox says she had her two children with her.  Bittman, however, said records contradict Fox's account and show she did not have any youngsters with her that day.

45.     Upon information and belief, Bittman told a reporter for the *Southtown Star* that Fox did not have her children with her at the Library on October 4, 2013.

46.     Fox had her two children with her at the Library on October 4, 2013.

47.     Bittman knew that Fox had her two children with her at the Library on October 4, 2013 when Bittman spoke with reporters on or about November 4, 2013.

48.     Internal Library documents show Fox had her children with her on October 4, 2013.

49.     The same November 4, 2013 article by Donna Vickroy and Mike Nolan in *Southtown Star* states as follows:

> Bittman said the library staffer told library officials that Fox's original story was that one man was accessing pornography.  "Her story changes over time," Bittman says.

50.     Bittman told a reporter for the *Southtown Star* that Megan Fox's "story changes over time" concerning the October 4, 2013 incident.

51.     Fox's story about the October 4, 2013 incident has not changed over time.

52.     Bittman knew Fox had not changed her story regarding the October 4, 2013 incident.

53.     These same false statements were republished by CBS Local on November 5, 2013, at the following url:   http://chicago.cbslocal.com/2013/11/05/battle-of-librarys-internet-porn-policy-heats-up/.

54.     The November 5, 2013 CBS Local article states as follows:

> Fox says she had her two children with her.  Bittman, however, said records contradict Fox's account and show she did not have any youngsters with her that day.

55.     The November 5, 2013 CBS Local article also states as follows:

> Bittman said the library staffer told library officials that Fox's original story was that one man was accessing pornography.  "Her story changes over time," Bittman says.

56.     Upon information and belief, Bittman has repeated these and other false statements to other members of the media, including Taylor Anderson from the *Chicago Tribune*.

57.     On or about November 6, 2013, Ben Feldheim of the *Orland Park Patch* called Fox to discuss the controversy involving the Library.

58.     Feldheim stated he had just spoken with Bridget Bittman and had some questions for Fox.

59.     Feldheim then asked Fox if she was responsible for a number of recent incidents at the Library, including a false police report, impersonating an *Orland Park Patch* reporter, and making harassing telephone calls to a Library attorney.

60.     Upon information and belief, Bittman told Feldheim that Fox falsely reported on October 31, 2013 that a man was masturbating in the Library and then changed her story.

66

61.     Fox did not make any reports about a man masturbating in the Library on October 31, 2013.

62.     Fox was not at the Orland Park Public Library on October 31, 2013.

63.     Upon information and belief, Bittman knew that it was not Fox who had made this October 31, 2013 report.

64.     Upon information and belief, Bittman told Feldheim that Fox had impersonated an *Orland Park Patch* reporter.

65.     Fox did not impersonate an *Orland Park Patch* reporter.

66.     Upon information and belief, Bittman knew Fox had not impersonated an *Orland Park Patch* reporter.

67.     Upon information and belief, Bittman told Feldheim that Fox had made harassing telephone calls to a Library attorney.

68.     Fox did not make any harassing telephone calls to a Library attorney.

69.     Upon information and belief, Bittman knew Fox did not make any harassing telephone calls to a Library attorney.

70.     Each of these false statements damaged Fox's reputation for honesty and credibility as a writer within the journalism community in Chicago, even where the media chose not to print Bittman's false statements.

### *Impact on Megan Fox's Writing Career*

71.     Megan Fox and Kevin DuJan are both writers and community activists.

72.     Fox and DuJan maintain a YouTube channel of news and entertainment videos they have created that, among other things, review children's books and audit museums and other cultural attractions for propaganda and bias.

73.     Fox has been a writer for over ten years and has had an extensive collection of articles published on sites like David Horowitz's NewsRealBlog and PJ Media.

74.     In October 2013, Fox was pursuing an opportunity to become a paid writer for TheBlaze.

75.     On October 17, 2013, Mike Opelka, editor of FireWire Newsletter at TheBlaze, stated as follows:

> I know and enjoy your work on PJ too. We regularly cross-post items on TheBlaze, and, if you'd be interested - I would like to send your opinion piece….to our Contributor's editor.

76.     Following this October 17 email, Fox spoke with Opelka numerous times on the telephone to discuss what work Fox would do for TheBlaze. During these calls, Opelka said to Fox, in words or substance, "Let's see what we can do together."

77.     TheBlaze pays its contributing writers.

78.     On October 22, 2013, Fox emailed Opelka about her experiences at the Library.

79.     On October 23, 2013, Opelka emailed Fox and said he had "reached out to the library staff and have not heard back from them."

80.     On October 24, 2013, Opelka emailed Fox again to inform her that he was "speaking with the Library's Public Info officer today."

81.     On or about October 24, 2013, Opelka spoke with Bridget Bittman, the Library's Public Information Officer.

82.     Upon information and belief, Bittman told Opelka that Fox did not have her children with her at the Library on October 4, 2013.

83.     Bittman knew Fox had her children with her at the Library on October 4, 2013.

84.     On October 29, 2013, Fox emailed Opelka to ask if he had "any news" on the Library issue.

85.     On October 30, 2013, Opelka emailed Fox and said, "I have had some contact with the library and if some of the issues they claim are true, it casts a pall on some of your arguments."

86.     In this October 30, 2013 email, Opelka said, "They (the library) claim that you were trying to use their children's computers without a child present and that (according to their rules) is not permitted. Was this the case?"

87.     In this October 30, 2013 email, Opelka also said, "In my opinion, this library needs more supervision and oversight. I am still looking into it, but there are some problems with the story. Can you shed any additional light on the questions the library raised?" That same day, Fox emailed a response to Opelka.

88.     This October 30, 2013 email was the last communication Opelka had with Fox.

89.     After Opelka spoke with Bittman, Opelka stopped taking Fox's telephone calls.

90.     After Opelka spoke with Bittman, Fox's freelance work was not picked up by TheBlaze.

91.     After Opelka spoke with Bittman, TheBlaze did not hire Fox to do paid writing work about the Library or any other topic.

92.     Fox was denied that opportunity to write for TheBlaze due to Bittman's false and defamatory statements.

### *Harm and Damages*

93.     Fox has a reputation in the community as an honest, credible, and well-respected writer and journalist.

94.     Bittman's statements, as outlined in Paragraphs 39 through 92 above, constitute false and defamatory statements ("False and Defamatory Statements").

69

95. Bittman's False and Defamatory Statements harmed Fox's reputation as an honest and credible writer and journalist.

96. Upon information and belief, Bittman's False and Defamatory Statements resulted in Fox losing the opportunity to do paid writing work for TheBlaze.

97. Upon information and belief, Bittman's False and Defamatory Statements have caused Fox to lose other opportunities to do paid writing or broadcasting work.

98. Bittman's False and Defamatory Statements to other members of the media damaged Fox's reputation for honesty and integrity as a writer and journalist.

99. Since the publication of the False and Defamatory Statements, any individual hearing or reading the statements would wrongly believe that Fox is a liar.

100. Since the publication of the False and Defamatory Statements, any individual hearing or reading the statements would wrongly believe that Fox lacks credibility as a writer and journalist.

101. Since the publication of the False and Defamatory Statements, any individual hearing or reading the statements would wrongly be prejudiced against Fox in her profession.

102. A significant number of Fox's colleagues in the media have become aware of, heard, or read the False and Defamatory Statements.

103. Upon information and belief, a significant number of potential employers have become aware of, heard, or read the False and Defamatory Statements.

104. The False and Defamatory Statements have caused Fox to suffer and continue to suffer from damaged reputation, embarrassment, and emotional distress.

## FIRST CLAIM FOR RELIEF
## DEFAMATION *PER SE*

105.    Counterclaimant Fox hereby incorporates by reference Paragraphs 1 through 104 above in this First Claim for Relief as though fully set forth herein.

106.    The False and Defamatory Statements constitute the publication of false and defamatory statements of fact by Bittman about Fox.

107.    The False and Defamatory Statements falsely imply that Fox is a liar or makes up stories.

108.    The False and Defamatory Statements falsely impute a lack of honesty, integrity, and professionalism in Fox's work as a writer and journalist.

109.    The False and Defamatory Statements prejudice Fox in her employment, including by damaging her credibility as a writer and journalist.

110.    Bittman presented the False and Defamatory Statements as fact.

111.    The False and Defamatory Statements made by Bittman about Fox are and would be highly offensive to a reasonable person.

112.    The False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Bittman to third parties.

113.    Bittman caused these False and Defamatory Statements to be published to a wide audience via media, including but not limited to print newspapers and online news websites.

114.    Bittman made the False and Defamatory Statements with actual malice knowing the falsity of the statements.

115.    If Bittman did not know the falsity of the statements, she acted with reckless disregard for the falsity of the False and Defamatory Statements to the detriment of Fox.

116. As a result of Bittman's conduct and the publication of the False and Defamatory Statements, Fox has suffered and continues to suffer damages including, but not limited to harmed reputation, damaged credibility as a writer, loss of paid writing and broadcasting opportunities, embarrassment, and emotional distress.

117. WHEREFORE, Fox seeks an award of compensatory and punitive damages arising from Bittman's *per se* defamation of her.

## SECOND CLAIM FOR RELIEF
## DEFAMATION *PER QUOD*

118. Counterclaimant Fox hereby incorporates by reference Paragraphs 1 through 104 above in this Second Claim for Relief as though fully set forth herein.

119. The False and Defamatory Statements constitute the publication of false and defamatory statements of fact by Bittman about Fox.

120. The False and Defamatory Statements falsely imply that Fox is a liar or makes up stories.

121. The False and Defamatory Statements falsely impute a lack of honesty, integrity, and professionalism in Fox's work as a writer and journalist.

122. The False and Defamatory Statements prejudice Fox in her employment, including by damaging her credibility as a writer and journalist.

123. Bittman presented the False and Defamatory Statements as fact.

124. The False and Defamatory Statements made by Bittman about Fox are and would be highly offensive to a reasonable person.

125. The False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Bittman to third parties.

126.    Bittman caused these False and Defamatory Statements to be published to a wide audience via media, including but not limited to print newspapers and online news websites.

127.    Bittman made the False and Defamatory Statements with actual malice knowing the falsity of the statements.

128.    If Bittman did not know the falsity of the statements, she acted with reckless disregard for the falsity of the False and Defamatory Statements to the detriment of Fox.

129.    Bittman caused pecuniary damages to Fox through the loss of paid writing work at The Blaze.

130.    Upon information and belief, Bittman has caused Fox to lose other paid writing or broadcasting opportunities.

131.    As a result of Bittman's conduct and the publication of the False and Defamatory Statements, Fox has suffered and continues to suffer damages including, but not limited to harmed reputation, damaged credibility as a writer, loss of paid writing and broadcasting opportunities, embarrassment, and emotional distress.

132.    WHEREFORE, Fox seeks an award of compensatory and punitive damages arising from Bittman's *per quod* defamation of her.

### THIRD CLAIM FOR RELIEF
### FALSE LIGHT

133.    Counterclaimant Fox hereby incorporates by reference Paragraphs 1 through 104 above in this Third Claim for Relief as though fully set forth herein.

134.    The False and Defamatory Statements constitute the publication of false and defamatory statements of fact by Bittman about Fox.

135.    The False and Defamatory Statements falsely imply that Fox is a liar or makes up stories.

136.   Most of the False and Defamatory Statements identify Fox by name.

137.   Persons other than Bittman and Fox would and actually have reasonably understood that the False and Defamatory Statements related to and were about Fox.

138.   The False and Defamatory Statements cast Fox in a false light by portraying her has lacking honesty and credibility in her profession as a writer and journalist.

139.   The False and Defamatory Statements cast Fox in a false light by falsely portraying her as lacking the abilities to perform in her employment as a writer and journalist.

140.   The False and Defamatory Statements prejudice Fox in her employment.

141.   The False and Defamatory Statements made by Bittman about Fox are and would be highly offensive to a reasonable person.

142.   The False and Defamatory Statements constituted unprivileged publication of the defamatory statements by Bittman to third parties.

143.   Bittman caused these False and Defamatory Statements to be published to a wide audience via media, including but not limited to print newspapers and online news websites.

144.   Bittman made the False and Defamatory Statements with actual malice knowing the falsity of the statements.

145.   If Bittman did not know the falsity of the statements, she acted with reckless disregard for the falsity of the False and Defamatory Statements to the detriment of Fox.

146.   Bittman caused pecuniary damages to Fox through the loss of a paid writing opportunity at The Blaze.

147.   Upon information and belief, Bittman has caused Fox to lose other paid writing or broadcasting opportunities.

148.     As a result of Bittman's casting Fox in a false light by the publication of the False and Defamatory Statements, Fox has suffered and continues to suffer damages including, but not limited to harmed reputation, damaged credibility as a writer, loss of paid writing and broadcasting opportunities, embarrassment, and emotional distress.

149.     WHEREFORE, Fox seeks an award of compensatory and punitive damages arising from Bittman's portrayal of her in a false light.

## JURY DEMAND

Fox and DuJan demand a trial by jury of all claims and defenses upon which they are entitled to a jury trial.

## PRAYER FOR RELIEF

Fox and DuJan request that Plaintiff's Second Amended Complaint be dismissed with prejudice, that the Court find that Plaintiff is not entitled to any judgment or relief, that the Court shall enter judgment in favor of Fox and DuJan, that the Court award Fox compensatory and punitive damages on her Counterclaims, and that the Court award Fox and DuJan its attorneys' fees, costs, and expenses, pre-judgment interest, and such other and further relief as the Court deems just and proper.

Dated:  October 28, 2015                    Respectfully submitted,

                                            /s/ Brian Borchard
                                            Brian Borchard (Attorney No. 6302444)
                                            Margaret Pepple (Attorney No. 6309897)
                                            Theresa Cederoth (Attorney No. 6317943)
                                            KIRKLAND & ELLIS LLP
                                            300 North LaSalle
                                            Chicago, IL 60654
                                            Tel: (312) 862-7100
                                            Fax: (312) 862-2200
                                            brian.borchard@kirkland.com
                                            margaret.pepple@kirkland.com
                                            theresa.cederoth@kirkland.com
                                            *Counsel for Megan Fox and Kevin DuJan*

## CERTIFICATE OF SERVICE

I certify that on October 28, 2015, I caused the foregoing document to be served via Electronic Court Filing ("ECF") and/or electronic mail in compliance with the Federal Rules of Civil Procedure on the following counsel:

Meghan K. Nugent
Charles Lee Mudd, Jr.
Larry Joseph Lipka
Tatyana L. Ruderman
MUDD LAW OFFICES
3114 West Irving Park Road
Suite 1W
Chicago, Illinois 60618
Tel: (773) 588-5410
Fax: (773) 588-5440
mkn@muddlaw.com
cmudd@muddlawoffices.com
ljl@muddlaw.com
tlr@muddlaw.com

J. Hayes Ryan (# 6274197)
Maria C. Granjean (# 6296611)
Lindsay A. Watson (# 6301139)
GORDON & REES, LLP
1 North Franklin
Suite 800
Chicago, IL 60606
Tel: (312) 565-1400
hayesryan@gordonrees.com
mgranjean@gordonrees.com
mgranjean@gordonrees.com
*Counsel for Plaintiff*

Benjamin M. Shrader
HART MCLAUGHLIN & ELDRIDGE, LLC
116 W. Illinois St.
Suite 3E
Chicago, IL 60654
Tel: (312) 955-0545
bshrader@hmelegal.com
*Counsel for Daniel Kleinman*

/s/ Brian Borchard